**UNITED STATES of America,**
**Plaintiff,**

v.

**Lance William NEATHERLIN,**
**Defendant.**

**No. CR-99-14-DWM.**

United States District Court,
D. Montana,
Missoula Division.

Oct. 1, 1999.

Wendy Holton, Holton Law Office, Helena, MT, Steven T. Potts, Thompson, Jacobsen & Potts, Great Falls, MT, Jeffrey Steinborn, Steinborn & Associates, Seattle, WA, Alison Kay Chinn, Attorney at Law, Seattle, WA, for Lance Neatherlin, defendant.

Josh Van de Wetering, Office of the U.S. Attorney, Missoula, MT, for U.S.

### ORDER

MOLLOY, District Judge.

### I. INTRODUCTION:

Defendant Neatherlin was arrested near Eureka, Montana within three miles of the Canadian border and charged with one count of possession of a controlled substance with intent to sell and one count of possession of a firearm in drug trafficking. Neatherlin moves to suppress all evidence seized from him as well as statements he made during his arrest and the search of his vehicle on February 23, 1999. The basis of the motion is that government agents violated his Fourth Amendment rights. The motion was fully briefed and I conducted an evidentiary hearing and trial on September 22, 1999. For the reasons set out below, defendant's motion to suppress is denied.

### II. BACKGROUND FACTS:

On February 23, 1999, an alarm sounded at United States Border Patrol Agent Shane Baker's residence in Eureka, Montana. The alarm was connected to sensors that Agent Baker had earlier placed near the United States–Canadian border near the end of a logging road that extends from a local dirt road known as Deer Path Lane. The logging road is a mountain road in northwest Montana that dead ends within two hundred yards of the Canadian border. Agent Baker had visited this site numerous times in the previous months. Beginning December 30, 1998, he saw vehicle and foot tracks in the snow indicating to him that unknown persons had parked a vehicle at the dead end of the logging road and walked the last 200 yards to the border and into Canada to an area where tracks indicated vehicles had also parked. Tracks also led from Canada back into the United States. Concluding from the evidence that illegal border crossings were occurring, Agent Baker set up remote sensors to alert him when a vehicle approached the area along Deer Path Lane. Agent Baker testified that these sensors were not triggered by animals. They only detect vehicles.

The alarm sounded around 2:00 a.m. on the morning of February 23. Baker, U.S. Forest Service law enforcement officer Joel Young and Lincoln County Sheriff Sergeant Matt Neumann proceeded to the intersection of Deer Path Lane and West Kootenai Road to wait and to watch for what Baker thought was an illegal alien

entry into the United States. Around 4:30 a.m. a white Ford pickup exited Deer Path Lane onto West Kootenai Road. Agent Baker, Officer Young, and Sergeant Neumann followed the vehicle and pulled it over. Baker testified he made the stop thinking he would find persons who had illegally crossed from Canada into the United States. The defendant was ordered out of the vehicle. Neatherlin got out of his truck as he was told. When he did he left the driver's door open, and moved toward the officers as ordered.

Suspecting they would still find other occupants in Neatherlin's pickup, the officers then "cleared" the vehicle visually. The officers were surprised to find no illegal aliens. Neatherlin was then asked what he was doing in the isolated and remote far reaches of Montana in the middle of night and early morning hours. He responded that he was "snow boarding." Baker then approached Neatherlin's pickup with his trained canine partner, Nero. Following standard procedure, Baker "cast" directions to Nero to sniff along the outside of the vehicle beginning at the driver's side front bumper. When Nero was abreast of the open driver's side door and still outside the truck, he alerted to the odor of drugs and leapt into the cab. Nero ignored Baker's command to continue the search along the outside of the vehicle, and instead sniffed the pickup cab as he was trained to do and then indicated on the back window between the cab and the covered pickup bed, the source of his trained response.

Deputy Sheriff Neuman then searched the pickup bed and seized a suitcase placed beneath several tires. Approximately forty pounds of a powder-like substance and a nine millimeter Baretta pistol were found in the suitcase. The substance was later tested and found to be 84% pure cocaine. Neatherlin had been in Sao Paolo, Brazil less than a week before this border incident.

## III. DISCUSSION:

### A. Nero's positive indication that there were drugs in Defendant's vehicle gave Agent Baker probable cause to search the vehicle.

██ Defendant argues that Nero's entry into the cab of his pickup through an open door is an illegal search because the agents did not have probable cause to arrest or search at that time. A drug dog sniffing an item in a public place does not constitute a search under the Fourth Amendment. *United States v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). Police may not search an automobile unless they have probable cause to believe it contains contraband. *Almeida–Sanchez v. United States*, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). A canine sniff alone supplies probable cause to search, provided that the dog is reliable. *United States v. Lingenfelter*, 997 F.2d 632, 638 (9th Cir.1993).

██ The Tenth Circuit Court of Appeals held that where a defendant voluntarily opened the hatchback of his car and then left it open, the subsequent, unsolicited, entry of a drug dog into the hatchback was not a search. *United States v. Stone*, 866 F.2d 359, 363 (10th Cir.1989). In *Stone* the drug dog did not positively indicate the presence of drugs in the vehicle until after he had jumped inside. In this case, the proof shows that Nero had already detected drugs before entering the cab of the Defendant's pickup.

Agent Baker's uncontroverted testimony was that his dog will only enter an open door when he is directed inside or when he detects drugs. Agent Baker testified that he started Nero sniffing at the front left corner of Neatherlin's pickup. He casted Nero along the driver's side of the vehicle, intending to sniff around the perimeter of the truck. However, when Nero passed by the open door he alerted to the smell of an illicit substance, broke away from Agent Baker's commands and entered the cab of the vehicle. The dog entered the

cab after he detected the drugs. Nero's positive indication that drugs were in the vehicle prior to his entering the cab supplied the officers with probable cause to search the vehicle.

## B. The evidence presented in this case indicates Nero was reliable.

■ Defendant also challenges Nero's credibility and reliability. However, the evidence presented in this case shows, by a preponderance of the evidence, that Nero is reliable. Agent Baker testified that he and Nero train at least eight hours every two weeks. Additionally, both Baker and the dog are tested and certified annually by the Border Patrol. They are certified by another agency biannually. When asked whether Nero ever alerts where no drugs are present, Agent Baker responded "I have not experienced that." Agent Baker also testified that Nero is able to detect very small quantities of drugs such as marijuana seeds and other residue. Finally, Defendant's Exhibit # 1, the United States Border Patrol Canine Training Record, indicates that "Nero did real well on all searches. On the wood shed he air scented from quite a long distance and went right to the source". Based upon this evidence, the Government has met its burden of proving Nero's reliability.

## C. Agent Baker had reasonable suspicion to Stop Neatherlin's vehicle.

■ An officer may stop an individual for investigatory purposes if the officer can show "specific and articulable facts which, taken together with rational inferences from these facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). An officer may also temporarily detain an individual on the basis that the officer had reasonable suspicion that the individual had committed or is about to commit a crime. *Florida v. Royer*, 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983). Agent Baker had reasonable suspicion to temporarily stop Neatherlin and to detain him until Baker could dispel the suspicion that laws were being violated.

Reasonable suspicion is determined by looking at what Agent Baker knew prior to stopping Neatherlin. Baker testified that he knew this area was a known border crossing area, and that Deer Path Lane had been blocked off and barricaded near the border to prevent further illegal entries into the United States. Agent Baker also testified that he first noticed on December 30, 1999 that someone was using the logging road which extends toward Canada from Deer Path Lane. The tracks in the snow indicated to Baker that someone had driven to within two hundred yards of the border, parked the vehicle where the road became impassable and walked the remaining distance to the border. Further investigation of tracks in the snow indicated persons had done the same from the Canadian side. Agent Baker saw these tracks again on February 12, 1999. He testified that, based upon his experience, he concluded that illegal border crossings were occurring.

Following the February 12th observation, Agent Baker installed remote sensors on the logging road west of Deer Path Lane. He testified that these sensors are able to give him directional data on any vehicle traveling along the logging road. On February 23, 1999 at 2:16 a.m. the sensors alerted Agent Baker that someone was traveling up the logging road toward the Canadian border. He knew that a vehicle had travelled past the remote sensors toward the Canadian Border and remained there from 2:16 a.m. until 4:30 a.m. He also knew that the 4:30 a.m. triggering of the sensors indicated the vehicle was leaving the area headed south toward West Kootenai Road.

Baker testified that the distance from the sensors to the intersection of Deer Path Lane and West Kootenai Road was a little less than one mile. After the sensors indicated the vehicle was traveling toward West Kootenai road he notified Officer Young that a vehicle would appear in a couple of minutes. About two minutes later, roughly the time it would take a

vehicle traveling 20–25 mph to travel one mile, Neatherlin's truck appeared at the intersection of Deer Path Lane and West Kootenai Road as predicted.

When Baker first saw the suspect vehicle, he knew it was not local. Baker testified that he knows the local Amish residents and that to his knowledge only one family owns a vehicle. Neatherlin's white pickup truck with out-of-county license plates was not the vehicle Baker knew was owned by the family.

The facts that Agent Baker knew prior to stopping Neatherlin are sufficient to establish reasonable suspicion about illegal activity involving the border. The remoteness of the area, the time of year and the time of day, combined with the facts articulated above are sufficient, specific and articulable facts to warrant a *Terry* Stop.

Defendant argues that Agent Baker did not have reasonable suspicion to stop Neatherlin and relies upon *United States v. Morrison*, 546 F.2d 319 (9th Cir.1976). In *Morrison*, the Ninth Circuit Court of Appeals stated that "proximity to the border and prior illegal activity in the area are relevant factors, (citation omitted), but they do not justify a stop absent other indicia of illegal activity." *Morrison* at 320. Here, sufficient additional facts provide the further indicia of illegal activity.

### D. The Agents had probable cause to search Neatherlin's vehicle independent of his arrest.

Neatherlin argues that this search exceeded the scope of a permissible *Terry* Stop. A *Terry* stop must last "no longer than is necessary to effectuate the purpose of the stop." *Royer*, 460 U.S. at 500, 103 S.Ct. 1319. The purpose of this stop was to determine if Neatherlin was involved in an illegal border crossing. After detaining Neatherlin, Agent Baker immediately used his drug dog to determine if Neatherlin's pickup contained drugs. This search did not exceed the scope of a permissible *Terry* stop. See *United States v. Mondello*, 927 F.2d 1463, 1471 (9th Cir. 1991).

Neatherlin argues that he was unlawfully placed under arrest when he was hand-cuffed and placed in the officer's vehicle. Whether a suspect is under arrest depends on all the circumstances, including the extent liberty of movement is curtailed and the type of force used. *Terry v. Ohio*, 392 U.S. 1, 30, 392 U.S. 1, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968). This stop occurred in a very remote and wooded part of a remote state in the middle of the night. There was also a justifiable belief that other persons were in the pickup. The location and time of this stop created reasonable concerns for officer safety. However, the facts in this case exceed the boundaries of investigatory detainment. When Deputy Neuman handcuffed Neatherlin and placed him in the patrol car Neatherlin was under arrest. See *United States v. Ricardo D.*, 912 F.2d 337, 340 (9th Cir.1990). At this point there was no probable cause to arrest Neatherlin. However, nothing gained from Neatherlin's arrest is essential for the search of the vehicle.

When determining whether evidence from an illegal arrest must be suppressed the question is whether police obtained the evidence "by exploitation of the illegality." *Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Suppression is warranted when there exists a "sufficiently close relationship between the arrest and the seizure." *United States v. Shephard*, 21 F.3d 933, 939 (9th Cir.1994). Evidence must be suppressed whenever its discovery was "brought about *only* because of the suspect's illegal detention." *Id.*, quoting *United States v. Chamberlin*, 644 F.2d 1262 (9th Cir.1980) (*cert. denied*, 453 U.S. 914, 101 S.Ct. 3148, 69 L.Ed.2d 997)

Here, the positive indication by the drug dog is an independent intervening event after a justifiable stop that led police to the evidence. The Government gained nothing from Neatherlin's arrest and used nothing from his arrest to help them find the drugs in the truck. Nor did

they use anything gained during Neatherlin's arrest to get probable cause to search the truck. Probable cause was supplied by the dog indicating the presence of drugs in the vehicle. This independent intervening event removes the results of the search from any exploitation of the illegal arrest.

The only evidence that the officers obtained from Neatherlin after he was technically under arrest was Neatherlin's statement that he was snow boarding. While this statement may have increased the officers' suspicion, it is not necessary for the probable cause to search Neatherlin's vehicle. Probable cause to search the vehicle came from the positive indication by the drug dog. Baker had enough grounded suspicion of illegal border activity to use the dog even without the "snow boarding" claim.

### E. The Court need not decide whether this search qualifies as an extended border search or a functional equivalent border search.

Both parties briefed and argued the issue of whether the stop and subsequent search of the vehicle was an extended border search. Since reasonable suspicion existed to stop Neatherlin, it is not necessary to decide the border search issue.

### IV. CONCLUSION:

Neatherlin's Fourth Amendment rights were not violated when government agents stopped and searched his vehicle. Agent Baker's drug dog Nero indicated there were drugs present in Neatherlin's vehicle before anyone entered the interior of the vehicle. This positive indication provided the officers with the probable cause necessary to search the vehicle. Furthermore, the government presented sufficient evidence of Nero's reliability. Finally, all the information Agent Baker had prior to stopping Neatherlin's vehicle was sufficient to establish reasonable suspicion that a crime had been committed.

Wherefore, IT IS HEREBY ORDERED that defendant's motion to suppress (docket # 21) is DENIED.