UNITED STATES of America

v.

James Patrick KELLY.

No. Crim. L–00–1129S.

United States District Court,
S.D. Texas,
Laredo Division.

Jan. 22, 2001.

Marina Garcia Marmolejo, Office of U.S. Atty., Laredo, TX, for U.S.

James Patrick Kelly, Naples, FL, Pro se.

## MEMORANDUM AND ORDER

ELLISON, District Judge.

Defendant James Patrick Kelly has moved to suppress evidence obtained during a strip search after a trained narcotics canine alerted to him as he entered the United States via International Bridge Number 1 in Laredo, Texas. Defendant's Motion to Suppress is hereby DENIED.

The facts in this case are essentially undisputed.[1] On September 23, 2000, Defendant arrived at the International Bridge Number 1 in Laredo, Texas, via the pedestrian walkway. Lexi, a trained narcotics canine, was present in the pedestrian walkway and immediately showed interest in Defendant by walking along-side him. Lexi then touched her nose to Defendant's groin area and alerted.[2] Once

---

1. While Defendant stated in his brief that, if his Motion to Suppress is denied, he "reserves his right to request an evidentiary hearing on whether the canine's conduct constituted an alert," this Court declines to grant any such request. Pursuant to this Court's request that the parties try to stipulate to all uncontested facts, counsel for the Government offered a proposed statement of facts with a request that Defendant object if he disagreed with them. Except for noting that the canine touched Defendant's groin with her nose, Defendant made no objections. Therefore, this Court will accept the facts as proposed by the Government and amended by Defendant.

2. Both parties agree that Lexi is a "passive" alert dog who sits down when alerting. A "passive" alert dog can be contrasted with an

Lexi alerted to Defendant, he was asked if he had any medications or hidden contraband to declare and he replied in the negative. Defendant was then escorted into a search room where he was ordered to drop his pants during a strip search.[3] Rohypnol and Valium pills were subsequently found hidden in his groin area.

Defendant argues that the sniff by the canine constituted an unreasonable search of his person and therefore could not have provided the "reasonable suspicion" required to sustain the subsequent search of his person. Defendant asserts specifically that: 1) the use of trained canines to sniff pedestrians as they enter the United States constitutes a "search" subject to the reasonableness restrictions of the Fourth Amendment, 2) the "search" was unreasonable under the Fourth Amendment, and 3) even if the "search" were reasonable, the canine alert to Defendant's person was not reliable enough to provide the reasonable suspicion required to sustain the subsequent strip search.

*A. Whether the use of canines to sniff pedestrians on the walkway constitutes a "search"*

The Fifth Circuit has consistently held that the sniffing of personal property in a public place by a trained canine does not constitute a search under the Fourth Amendment. *See United States v. Dovali–Avila,* 895 F.2d 206, 208 (5th Cir.1990) (upholding a search conducted at an immigration checkpoint); *United States v. Place,* 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (finding that "the exposure of respondent's luggage, which was located in a public place, to a trained ca-

nine—did not constitute a 'search' within the meaning of the Fourth Amendment"). It has held, conversely, that the up-close sniffing of children in a school by a trained canine does constitute a search under the Fourth Amendment. *See Horton v. Goose Creek Independent School District,* 690 F.2d 470, 479 (5th Cir.1982) (finding that such searches violated the children's rights under Fourth Amendment). The Court has left open the issue, however, of whether "the use of dogs to sniff people in some other manner, e.g. at some distance, is a search." *Id.* at 479.

■ In the instant case we are presented with the novel question of whether the up-close sniffing of a person at the border by a trained canine constitutes such a search. This Court holds that the up-close sniffing of people by trained canines "offends reasonable expectations of privacy" and is, therefore, a search under the Fourth Amendment.

■ In deciding whether a sniff on a person's body by a narcotics canine at a national border constitutes a search, we must determine whether it "offends reasonable expectations of privacy." *See Horton v. Goose Creek Independent School District,* 690 F.2d 470, 476–77 (5th Cir. 1982) (quoting *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). The Government has suggested that this Court analyze the sniff under the doctrine of "public smell." This doctrine, analogous to the "plain view" doctrine, holds that a person does not have a reasonable expectation of privacy in any odors that can be detected by law enforcement agents (or their trained canines) while they are in a position they have a right to be in.

"aggressive" alert dog who alerts to contraband by scratching or biting.

**3.** There is some disagreement as to whether a pat-down of Defendant was conducted before he was strip searched. If a pat-down of Defendant's groin area was conducted, it may have been sufficiently intrusive such that it would itself constitute a search requiring "reasonable suspicion" to support it. *See United States v. Sandler,* 644 F.2d 1163, 1169

(5th Cir.1981) (cautioning that, while an "ordinary pat-down or frisk" may not require any suspicion at the border, that holding may not extend to "a more intrusive search"). Such a determination would be immaterial to this opinion, however, so this Court will assume for the purposes of the opinion that Defendant was not subjected to a pat-down prior to being ordered to drop his pants.

*See id.* at 477 (finding that the officers would have had a right to sniff the students' lockers and automobiles and, therefore, the odors detected by their canines were not protected by the Fourth Amendment because "the dog's olfactory sense merely 'enhances' that of the police officer" rather than providing a new method of detection). The Government argues that this doctrine allows us to conclude that the up-close canine sniff at issue in the instant case did not offend reasonable expectations of privacy and, therefore, was not a search under the Fourth Amendment.

In *Horton*, the Fifth Circuit considered a similar proposition and rejected it. *See id.* (holding that "sniffing by dogs of the students' persons in the manner involved in this case is a search within the purview of the fourth amendment"). Recognizing that most people in society "deliberately attempt not to expose the odors emanating from their bodies to public smell," the Fifth Circuit found the "intentional close proximity sniffing of the person [to be] offensive whether the sniffer be canine or human." *Id.* at 478–79. Because people have a reasonable expectation of privacy in the odors detectable by up-close sniffing, that Court concluded that the canine sniffing was a search. *See id.* at 478 (citing agreement among commentators that "the intensive smelling of people, even if done by dogs, [is] indecent and demeaning").

The Government argues that the instant case should be distinguished from the situation in *Horton* because that canine alerted more aggressively and on children. *See id.* at 479 (discussing how the dog "put[ ] his nose on the child and scratch[ed] and manifest[ed] other signs of excitement"); *id.* (noting "the embarrassment which a

young adolescent, already self-conscious about his or her body, might experience when a dog" sniffs the air around his or her person). In contrast, the instant case presents a situation where an adult male was sniffed by a passive alert canine as he was entering the United States from Mexico.

The Fifth Circuit in *Horton*, however, does not appear to rely on the age of the person being sniffed or the scratching by the canines in its determination that the sniff was a search.[4] Instead, the Court focused on the fact that the canines made contact with the student's bodies while they were sniffing them. *See id.* at 477–78 (noting that, in the only case that held the sniffing of students not to be search, there was no evidence "that the dogs actually touched the students" while in *Horton*, the dogs "put their noses right up against the children's bodies") (citing *Doe v. Renfrow*, 631 F.2d 91 (7th Cir.1980)); *id.* at 478 (noting that "society recognizes the interest in the integrity of one's person, and the fourth amendment applies with its fullest vigor against any intrusion on the human body"). Further, the Court specifically distinguished sniffing by a canine at some distance, suggesting that it would find any up-close canine sniffing to be a search. *See id.* at 479 (leaving open the question of "whether the use of dogs to sniff people in some other manner, e.g., at some distance" would be a search within the Fourth Amendment).

The instant case presents a situation in which a trained canine, placed on the pedestrian walkway to sniff people as they walked by, was allowed to follow Defendant and make contact with his groin to sniff him. We find no meaningful basis on which to distinguish the offense to Defen-

---

4. Even if the *Horton* Court intended to limit its holding to aggressive sniffing by canines of children, the instant case presents that very possibility. The issue here, is whether the placement of trained canines on the pedestrian walkway to sniff everybody who enters the United States from a foreign country is a search. This walkway is not limited to adults and canine handlers cannot always predict the manner in which their canines will react to people. *See Horton v. Goose Creek Independent School District*, 690 F.2d 470, 482 (5th Cir.1982) (noting that the canine handlers in *Horton* had chosen the canines they brought to the school for their docility).

dant's privacy in the instant case from the offense to the privacy of the children in the *Horton* case. Accordingly, this Court finds that the placing of trained canines on the pedestrian walkway for the purpose of sniffing persons and packages entering the United States is a search subject to the reasonableness restrictions of the Fourth Amendment.

*B. Whether the "search" was reasonable*

■ Having determined that the use of canines to sniff pedestrians at the border does constitute a search, we must now consider whether that search was reasonable under the Fourth Amendment. *See id.* at 479 (asserting that a "decision that the sniffing is a search does not, however, compel the conclusion that it is constitutionally impermissible" because the Fourth Amendment "only restricts the government to 'reasonable' searches"). Because we find the use of trained canines to sniff pedestrians entering the United States to be part of a "routine border search," this Court finds such searches to be reasonable absent any showing of individualized suspicion.

■ In determining the reasonableness of a search, courts must "balanc[e] its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *United States v. Montoya de Hernandez,* 473 U.S. 531, 537, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985). When the search occurs at the border, this balance is "struck much more favorably to the Government" because of its strong interest in protecting its borders. *Id.* at 540, 105 S.Ct. 3304. Thus, certain types of searches are considered "routine border searches" and are found to be reasonable simply because they occur at the border. *See id.* at 538, 105 S.Ct. 3304 (noting that "routine searches of the persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant"). These searches include non-intrusive pat-downs, the re-

moval of a suspect's outer clothing, and inspection of the contents of pockets, purses, and wallets. *See United States v. Sandler,* 644 F.2d 1163, 1167 (5th Cir.1981). More intrusive searches conducted at the border require a showing of "reasonable suspicion." *See id.* at 1167 (finding that strip searches, body cavity, and stomach searches "present[ ] a degree of intrusion which requires more than mere suspicion to justify").

■ The Fifth Circuit in *Horton,* asserted that the degree of intrusion resulting from the up-close sniffing by a trained canine is comparable to that resulting from a pat-down of a suspect. *See Horton v. Goose Creek Independent School District,* 690 F.2d 470, 479 (5th Cir.1982) (analogizing the sniff "to the warrantless 'stop and frisk' situation upheld by the Supreme Court on the basis of [reasonable] suspicion.") (citing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). While a pat-down normally requires an officer to possess reasonable suspicion, it has been held to be sufficiently unintrusive such that it can be conducted at the border without any individualized suspicion. *See United States v. Sandler,* 644 F.2d 1163, 1167 (5th Cir.1981). Because it is comparably unintrusive, the up-close sniffing by trained canines is, likewise, reasonably conducted at the border without any individualized suspicion.

■ Defendant contends, however, that the intrusiveness of the search is compounded by the fact that the canine made contact with his groin and, thus, that the search in this instant case is less analogous to a routine border pat-down than an offensive pat-down. *See id.* at 1167 (recognizing that "a non-routine, offensive pat-down of a person could occur" and that such a search would require reasonable suspicion to sustain it). This is a difficult analogy to make, however, because the Fifth Circuit has never identified an offensive pat-down that would require reasonable suspicion to justify it. This type of pat-down would necessarily involve such a

degree of "embarrassment, indignity, and invasion of privacy" as to allow courts to equate its intrusiveness with a strip or body cavity search. *See United States v. Mejia,* 720 F.2d 1378, 1382 (5th Cir.1983) (asserting that "this Court's interpretation of intrusion is keyed to embarrassment, indignity, and invasion of privacy"); *United States v. Sandler,* 644 F.2d 1163, 1169 (5th Cir.1981) (noting the agreement among commentators that "the point at which the higher standard [of reasonable suspicion] is invoked is at the strip or body cavity search"). While this Court does accept that the contact with Defendant's groin adds to the intrusiveness of the canine sniff, we do not find it sufficient to impose on it the requirement of reasonable suspicion.[5]

Accordingly, this Court finds that the sniffing by a trained canine of Defendant's person constituted part of a routine border search and was reasonable under the Fourth Amendment without a showing of individualized suspicion.

*C. Whether the canine's alert provides reasonable suspicion*

 Defendant contends that, even if the canine sniff on Defendant constituted a valid search, it would be unreasonable to use the alert to justify the more intrusive strip search. While valid canine alerts on property create probable cause to search

the property, Defendant argues that canine alerts on people are less reliable.[6] *See Resendiz v. Miller,* 203 F.3d 902, 903 (5th Cir.2000) (finding that "[a] drug-sniffing canine alert is sufficient, standing alone, to support probable cause for a search"); *United States v. Dovali–Avila,* 895 F.2d 206, 207 (5th Cir.1990) (holding that "a 'dog alert' is sufficient to create probable cause to conduct a warrantless vehicle search"). This Court accepts the fact that canines may exhibit behaviors consistent with an alert as a natural response to many odors associated with innocent activities. *See Jones v. Latexo,* 499 F.Supp. 223, 228 (E.D.Tex.1980) (noting that "the odor of a female dog in heat, a cat, or other animal might also cause a 'sniffer dog' to become excited"). This Court rejects the notion, however, that canine alerts on those at the border cannot provide the basis for a more intrusive search.

 Strip searches that are conducted at our nation's border require only "reasonable suspicion" to sustain them. *See United States v. De Gutierrez,* 667 F.2d 16 (5th Cir. Unit B 1982). Reasonable suspicion requires that the law enforcement agent be able to articulate a "particularized and objective basis for suspecting the particular person" of criminal activity. *United States v. Montoya de Hernandez,* 473 U.S. 531, 541–42, 105 S.Ct.

5. Even assuming, as Defendant asserts, that a pat-down of a suspect that includes contact with his or her private areas would be an "offensive pat-down" requiring reasonable suspicion to justify it, Defendant's analogy is flawed. The degree of "embarrassment, indignity, and invasion of privacy" involved in a narcotics canine's happenstance sniff of a groin during a search is not at all the same as that of an officer's intentional grabbing of a suspect's private parts during a pat-down.

6. Defendant argues that the canine alert in this case could not provide probable cause because there was no showing as to that which the canine was alerting. However, there is no requirement that the government prove that a canine alert related specifically to the contraband eventually discovered on the defendant. In fact, the Fifth Circuit has

even rejected the idea that a trained dog's basic reliability need be established to sustain probable cause based on its alert. *See United States v. Williams,* 69 F.3d 27, 28 (5th Cir. 1995) (holding that "a showing of the dog's reliability is not required if probable cause is developed on site as a result of a dog sniff of a vehicle"). Further, well established precedent provides that probable cause must be determined by the facts that were known to the officer at the time of the search; they cannot be amended by facts discovered after a search is conducted. *See Dickens v. Lewis,* 750 F.2d 1251, 1254 (5th Cir.1984) (probable cause is established when "the facts available to the agents 'warrant a man of reasonable caution in the belief' ") (quoting *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925)).

3304, 87 L.Ed.2d 381 (1985). A trained canine's alert on a person is both particularized and objective. Further, it is at least as reliable as other bases on which the Fifth Circuit has found reasonable suspicion to sustain the strip search in question. *Cf. United States v. Adekunle,* 980 F.2d 985, 988 (5th Cir.1992) (finding reasonable suspicion sufficient to sustain a strip search on the basis of an informant alert for body smugglers and the defendant's having a passport from a known narcotics source country, traveling through Mexico with little luggage, and acting nervous and conferring with his companion in his own language before answering questions); *United States v. De Gutierrez,* 667 F.2d 16, 19 (5th Cir. Unit B 1982) (finding reasonable suspicion sufficient to sustain a strip search of defendant based on her resemblance to a drug courier profile, her apparent attempt to conceal her lower abdomen from view, and her reluctance to answer questions).

This Court finds and holds that the canine's alert provided the requisite reasonable suspicion to sustain the strip search of Defendant.

Accordingly, Defendant's Motion to Suppress is DENIED.

IT IS SO ORDERED.