STATE of Wisconsin, Plaintiff-Respondent,

v.

Tina M. MILLER, Defendant-Appellant.†

Court of Appeals

*No. 01–1993–CR. Submitted on briefs February 12, 2002.—*
*Decided May 2, 2002.*

2002 WI App 150

(Also reported in 647 N.W.2d 348.)

† Petition to review denied 9-26-02.

80

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Tim Provis*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Erik C. Peterson*, Iowa County District Attorney, Dodgeville.

Before Vergeront, P.J., Dykman and Deininger, JJ.[1]

¶ 1. DYKMAN, J. Tina Miller appeals from a judgment convicting her of possessing a controlled substance. She contends that the police violated her right against unreasonable searches and seizures when they conducted a canine sniff on her car, entered it and searched her purse. Because controlling precedent requires us to conclude that the dog sniff was not a search, and because the dog's alert on Miller's vehicle provided the police with probable cause, we affirm.

---

[1] This case was converted from a one-judge appeal to a three-judge appeal pursuant to WIS. STAT. RULE 809.41(3) (1999–2000). All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

## BACKGROUND

¶ 2. The police executed a search warrant to search the ground floor of a duplex in Dodgeville. In the midst of the search, officers discovered some marijuana. The occupants of the house were handcuffed, placed in a squad car and taken from the scene. A police officer then told another officer, Thomas Forbes, to "check around the cars located in that area" with Cora, a dog trained in detecting the odor of contraband.

¶ 3. Forbes walked Cora around a number of cars that were parked on the street near the residence. Cora alerted on the driver's side door of a car parked across the street.[2] Forbes walked Cora around the same car again and she alerted a second time on the driver's side door. The door was unlocked, so Forbes opened it and put Cora inside the car. When Cora alerted on a purse that was sitting on the driver's seat, Forbes took the purse, opened it, and found marijuana inside. Both the car and the purse belonged to Tina Miller, who was a guest at the residence. None of the officers knew to whom the car belonged before Forbes searched it.

¶ 4. The State charged Miller with possessing a controlled substance, contrary to WIS. STAT. §§ 961.41(3g)(e) and 961.14(4)(t). Miller moved to suppress the evidence found in her car, arguing that police unlawfully searched the car in violation of the state and federal constitutions. The circuit court denied the motion, and Miller pleaded no contest. Miller appeals.

---

[2] Forbes testified that Cora would indicate that contraband was located in a car by holding her breath and making a scratching motion.

## DECISION

### A. Canine Sniffs and Search and Seizure Law

¶ 5. The central dispute in this case is whether Forbes's use of a drug-sniffing dog to detect the presence of marijuana inside Miller's car violated her rights under the Fourth Amendment to the United States Constitution and article I, § 11 of the Wisconsin Constitution, which both protect the people's right against unreasonable searches and seizures. It is undisputed that the police did not have a warrant to search the car.[3] The State also does not argue that the police had probable cause or even reasonable suspicion to believe that they would find evidence of a crime inside the car before they conducted the dog sniff. Instead, the State argues that the dog sniff of Miller's car was not a search and thus neither the Fourth Amendment nor art. I, § 11 are implicated. Whether police conduct constitutes a "search" within the meaning of the state and federal constitutions is a question of law, which we review de novo. *See State v. Edgeberg*, 188 Wis. 2d 339, 344–45, 524 N.W.2d 911 (Ct. App. 1994).

¶ 6. The Supreme Court first addressed whether the Fourth Amendment applies to canine sniffs in *United States v. Place*, 462 U.S. 696 (1983). In *Place*, federal agents subjected the defendant's luggage to a "sniff test" by a trained narcotics detection dog after seizing the luggage in an airport. *Id.* at 698–99. The Court held that Place's luggage had been unreasonably seized. *Id.* at 710. In dicta, however, the Court also

---

[3] The warrant to search the residence is not part of the record. The State does not argue, however, that the warrant's scope extended to searching vehicles parked on the street.

stated that the canine sniff of Place's luggage did not constitute a search within the meaning of the Fourth Amendment. *Id.* at 707. Although it noted that "a person possesses a privacy interest in the contents of personal luggage that is protected by the Fourth Amendment," the Court concluded that was not dispositive in determining whether a search had occurred. *Id.* Rather, the Court focused on the fact that a dog sniff is "much less intrusive than a typical search." *Id.* Specifically, the Court reasoned:

> [T]he sniff discloses only the presence or absence of narcotics, a contraband item. Thus, despite the fact that the sniff tells the authorities something about the contents of the luggage, the information obtained is limited. This limited disclosure also ensures that the owner of the property is not subjected to the embarrassment and inconvenience entailed in less discriminate and more intrusive investigative methods.

*Id.* The Court then concluded "that the particular course of investigation that the agents intended to pursue here—exposure of respondent's luggage, which was located in a public place, to a trained canine—did not constitute a 'search' within the meaning of the Fourth Amendment." *Id.*; *see also United States v. Jacobsen*, 466 U.S. 109, 123 (1984) (holding that a drug field test does not compromise any legitimate interest in privacy because it discloses only whether a particular substance is cocaine).

¶ 7. Although our supreme court has not addressed this issue, this court has once addressed the constitutional requirements with respect to dog sniffs and concluded that a dog sniff of a car located in a motel parking lot did not implicate the Fourth Amendment. *See State v. Garcia*, 195 Wis. 2d 68, 535 N.W.2d 124 (Ct.

App. 1995).[4] In doing so, we did not consider *Place*, but rather relied on two federal court of appeals cases concluding that a motel guest does not have an expectation of privacy in a parking place. *See United States v. Diaz*, 25 F.3d 392, 396 (6th Cir. 1994); *United States v. Ludwig*, 10 F.3d 1523, 1526 (10th Cir. 1993). We then concluded, "there is no legitimate expectation of privacy in the air space around a car that is parked in a motel parking lot." *Garcia*, 195 Wis. 2d at 75.

¶ 8. Miller does not discuss *Place* or *Garcia* but rather argues that a conclusion in her favor is dictated by *City of Indianapolis v. Edmond*, 531 U.S. 32 (2000). In *Edmond*, the City of Indianapolis had instituted vehicle checkpoints on highways with the purpose of finding illegal drugs. *Id.* at 34. After police stopped a vehicle, they would walk a drug-detecting dog around it. *Id.* at 35. The Court concluded that the checkpoint program violated the Fourth Amendment because it allowed police to seize vehicles without individualized suspicion and was only for the purpose of finding "ordinary criminal wrongdoing." *Id.* at 42, 48. Although the Court held that the program was unconstitutional, its holding had nothing to do with the use of drug-sniffing dogs, but resulted because vehicles were being stopped, i.e. "seized," without reasonable suspicion. The Court never explicitly reached the issue of using narcotics-detecting dogs. However, it cited to *Place* and noted that the "fact that officers walk a narcotics-detection dog around the exterior of each car at the Indianapolis checkpoints does not transform the sei-

---

[4] We did not consider the applicability of art. I, § 11 of the Wisconsin Constitution.

zure into a search." *Id.* at 40. Miller's car did not need to be stopped in order to conduct a dog sniff, so *Edmond* does not apply.

■

¶ 9. We therefore conclude that under the Supreme Court's interpretation of the Fourth Amendment, dog sniffs are not searches. Although *Place*'s actual holding specifically addressed only sniffs of luggage in an airport, the logic of *Place*—that dog sniffs reveal only illegal conduct so they intrude on no legitimate privacy interest—would apply equally in any setting.[5] Even if *Place*'s holding does not extend to dog sniffs of homes or persons, we see no meaningful distinction in this context between dog sniffs of luggage in an airport and dog sniffs of unoccupied cars parked on a public street.

■

¶ 10. Because current law does not classify canine sniffs as searches within the meaning of the Fourth Amendment, Forbes was not required to have probable cause or reasonable suspicion before walking a dog

---

[5] At least one federal court has concluded that, despite *United States v. Place*, 462 U.S. 696 (1983), and *United States v. Jacobsen*, 466 U.S. 109 (1984), dog sniffs *are* searches when they are performed outside a home because there is a greater expectation of privacy in homes. *See United States v. Thomas*, 757 F.2d 1359, 1366–67 (2d Cir. 1985). Another district court concluded, without addressing *Place*, that a canine sniff of a person was a search. *United States v. Kelly*, 128 F. Supp. 2d 1021, 1023 (S.D. Tex 2001). But these conclusions are questionable given *Place*'s broad rationale. Further, neither *Place* nor *Jacobsen* suggested that the object subject to search was an important or even relevant consideration in determining whether a dog sniff is a search.

around Miller's vehicle for the purpose of detecting drugs in the vehicle's interior.

*B. Probable Cause to Search Miller's Vehicle*

¶ 11. The only remaining issue is whether Forbes violated the Fourth Amendment when he opened the car door, let Cora inside, and opened and looked inside Miller's purse. There is no question that entering a person's car and searching items inside it constitutes a search. *See Almeida-Sanchez v. United States,* 413 U.S. 266, 269 (1973). However, because of the reduced expectation of privacy that individuals have in vehicles, a warrantless search of a vehicle is not necessarily unreasonable. *See State v. Matejka,* 2001 WI 5, ¶ 22, 241 Wis. 2d 52, 621 N.W.2d 891; *State v. Pallone,* 2000 WI 77, ¶ 59, 236 Wis. 2d 162, 613 N.W.2d 568. Rather, an automobile may be searched without a warrant so long as there is probable cause to believe that evidence of a crime will be found inside. *Pallone,* 2000 WI 77 at ¶¶ 58 to 60.

¶ 12. Whether a given set of facts provided probable cause to search a vehicle is a question of law that we review de novo. *See id.* at ¶ 27. Although Wisconsin courts have not addressed whether an alert from a drug-sniffing dog provides sufficient evidence of a crime to search a vehicle,[6] the supreme court has held that the "unmistakable odor of marijuana" detected by a *police officer* coming from an automobile provides probable cause to search that automobile. *State v. Secrist,* 224

---

[6] *State v. Garcia,* 195 Wis. 2d 68, 535 N.W.2d 124 (Ct. App. 1995), did not address this issue because it concluded that the defendant had given consent to search.

Wis. 2d 201, 210, 589 N.W.2d 387 (1999). Further, courts in other jurisdictions have uniformly held that a dog's alert on an object provides probable cause to search that object, provided that the dog is trained in narcotics detection and has demonstrated a sufficient level of reliability in detecting drugs in the past and the officer with the dog is familiar with how it reacted when it smelled contraband.[7] *See, e.g., United States v. Lingenfelter*, 997 F.2d 632, 639 (9th Cir. 1993); *Ludwig*, 10 F.3d at 1527–28; *United States v. Race*, 529 F.2d 12, 14 (1st Cir. 1976); *United States v. Neatherlin*, 66 F. Supp. 2d 1157, 1160–61 (D. Mont. 1999); *State v. Siluk*, 567 So. 2d 26, 27 n.1, 28 (Fla. Dist. Ct. App. 1990); *Commonwealth v. LaPlante*, 622 N.E.2d 1357, 1361 n.10 (Mass. 1993); *see also Secrist*, 224 Wis. 2d at 211 n.8 (quoting 1 Wayne R. LaFave, Search and Seizure § 2.2(f), at 450 (3d ed. 1996), for the proposition that a trained dog's smelling of controlled substances can provide probable cause to search when dog has been shown to be reliable).

¶ 13. Forbes testified that Cora had been trained in narcotics detection, that he had conducted over one hundred drug sniffs with Cora and that he was familiar with how Cora would alert to him. He further testified that of the forty times that Cora alerted on a vehicle, "illegal contraband or substances" were found thirty-five times. Miller does not challenge the veracity of this testimony.

---

[7] This suggests that there may be a need to obtain additional evidence to support probable cause when the dog has not yet established a proven track record that it is reliable.

¶ 14. We conclude that under these facts, Forbes had probable cause to search Miller's vehicle. Although Cora did not have a 100% rate of accuracy, probable cause requires only that there is a "fair probability" that evidence of a crime will be found. *State v. Hughes*, 2000 WI 24, ¶ 21, 233 Wis. 2d 280, 607 N.W.2d 621. Cora's level of reliability was sufficient to authorize a search of the vehicle under this test.

¶ 15. Probable cause to search Miller's vehicle also included probable cause to search Miller's purse. *See Wyoming v. Houghton*, 526 U.S. 295, 302 (1999) (holding that officers may search packages and containers in a vehicle without individualized suspicion for each object when probable cause exists to search the vehicle). Further, that Forbes could not have known whether the purse belonged to the owner of the vehicle did not affect his authority to search it. *See Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978). Accordingly, once the dog sniff indicated that Miller's vehicle contained a controlled substance, Forbes had probable cause to search both the car and the purse. The circuit court did not err in denying Miller's motion to suppress.

*By the Court.*—Judgment affirmed.

¶ 16. DYKMAN, J. *(concurring)*. *United States v. Place*, 462 U.S. 696 (1983), and *State v. Garcia*, 195 Wis. 2d 68, 535 N.W.2d 124 (Ct. App. 1995), require a conclusion that the police did not violate Miller's Fourth Amendment rights when they conducted a dog sniff on her car. I write separately, however, to explain why the federal rule should not be applied automatically when interpreting the Wisconsin Constitution.

¶ 17. *Place*'s dicta that a dog sniff of luggage is not a search is based on the premise that a dog sniff

infringes on no legitimate expectation of privacy because it "discloses only the presence or absence of narcotics, a contraband item." 462 U.S. at 707. This rationale has serious weaknesses. First, it assumes that the dog is accurate, and that the privacy interests of innocents will not be compromised. This is not the case, however, as was shown in *Doe v. Renfrow*, 475 F. Supp. 1012 (N.D. Ind. 1979), *aff'd in part*, 631 F.2d 91 (7th Cir. 1980). In *Doe*, officials at a junior high school in Indiana became concerned that a drug problem existed among some of the students. *Id.* at 1016. The school superintendent decided to use drug-sniffing dogs to combat the problem. *Id.* The dogs were walked down the aisles in each classroom as the students sat in their desks. *Id.*

¶ 18. One of the dogs alerted on student Diane Doe. *Id.* at 1017. She was instructed to empty her pockets and her purse so that their contents could be checked for drugs. *Id.* No drugs were found. *Id.* Doe was then taken to the nurse's station. *Id.* She was asked if she had ever used marijuana and Doe replied that she had not. *Id.* She was then told to remove her clothing and officials conducted a strip search. *Id.* Still, no drugs or other illegal substances were found. *Id.* *Doe* demonstrates that, when no suspicion is required before a canine sniff is performed, there is a heightened risk that innocents will be subjected to unwarranted searches. *See also United States v. Kelly*, 128 F. Supp. 2d 1021, 1026–27 (S.D. Tex 2001) (holding that trained dog's alert on a person is sufficient to justify a strip search under certain circumstances).

¶ 19. Both *Doe* and Forbes's testimony in this case show that the accuracy of drug-sniffing dogs is far from

perfect.[1] Forbes testified that the dog who performed the sniff on Miller's car had incorrectly alerted five times out of a total of forty. Although thirty-five out of forty is a fairly high average, the five people who were wrongly implicated as being involved with illegal drugs likely think that it is not high enough. Because judges usually learn only about cases in which police find incriminating evidence, we may tend to forget that mistakes can intrude significantly on the legitimate expectation of privacy that innocent people have. It does little to acknowledge that wronged innocents may file a civil action for a Fourth Amendment violation, as under current jurisprudence, officials are often granted immunity from suit. In Doe's case, for instance, although the court found that the Fourth Amendment was violated, it concluded that school officials were not liable because they acted in good faith. *Doe*, 475 F. Supp. at 1028.

---

[1] At least one court has opined that the reason dogs may alert incorrectly is the high percentage of cash that contains sufficient quantities of cocaine to alert a dog. *United States v. Six Hundred Thirty-Nine Thousand Five Hundred Fifty-Eight Dollars ($639,558) in U.S. Currency*, 955 F.2d 712, 714 n.2 (D.C. Cir. 1992). The court stated that experts have concluded that anywhere from seventy to ninety-seven percent of all currency in the United States is contaminated by minute, but detectable, amounts of cocaine. *Id.* Obviously, no matter how well trained a dog is at detecting narcotics, this issue could still lead to inaccurate results.

For other discussions on the accuracy of dog sniffs, *see* Robert C. Bird, *An Examination of the Training and Reliability of the Narcotics Detection Dog*, 85 KY. L.J. 405, 408–09 (1996–97), and Andrew E. Taslitz, *Does the Cold Nose Know? The Unscientific Myth of the Dog Scent Lineup*, 42 HASTINGS L.J. 17 (1990).

¶ 20. A second problem in concluding that dog sniffs are not searches is that it allows the police nearly absolute discretion in who and what they target. It permits law enforcement officers to randomly walk dogs down any street, approach any person, and sniff any package for any or no reason. *See* Kenneth R. Wallentine, *Dogs Are a Prosecutor's Best Friend: Canine Search and Seizure Law,* PROSECUTOR 31 (Sept./Oct. 1997) (encouraging law enforcement to use canine sniffs in public parks, parking lots, trains, roadblocks, storage units, rental lockers and with respect to mail packages because they provide "probable cause on a silver platter").

¶ 21. Such discretion has consequences for more than just the guilty. Many law-abiding individuals would feel uneasy at the prospect of their cars or homes being sniffed at any time, or being subject to random canine sniffs of their person in public places. *See* 1 WAYNE R. LaFAVE, SEARCH AND SEIZURE § 2.1(e), at 315 (2d ed. 1986) ("If the issue is framed in terms of whether a totally unrestrained use of such dogs in a dragnet fashion would be tolerable in a free society, one's answer might likely be no."). Especially for members of minority groups, the risk that such techniques could be used selectively is also worrisome when there are no constitutional limitations, outside of a possible equal protection claim, on when a dog sniff may be used. *See People v. Dunn,* 564 N.E.2d 1054, 1058 (N.Y. 1990) ("To hold [that a canine sniff is not a search], we believe would raise the specter of the police roaming indiscriminately through the corridors of public housing projects with trained dogs in search of drugs."). Courts have a constitutional duty to ensure that individuals are not subjected to searches without reason. *See Terry v. Ohio,* 392 U.S. 1, 15 (1968) (stating that courts have a

"responsibility to guard against police conduct which is over-bearing or harassing").

¶ 22. Like *Place*, our decision in *Garcia* is also grounded in the Fourth Amendment, but it uses a different rationale. Instead of following *Place*'s logic that dog sniffs are not searches because they detect only illegal conduct, *Garcia* concluded that individuals have no legitimate expectation of privacy in the air space around their cars. *Garcia*, 195 Wis. 2d at 75.

¶ 23. The reasoning, if not the holding, of *Garcia* was recently rejected by the Supreme Court. In *Kyllo v. United States*, 533 U.S. 27 (2001), the Court considered whether the use of a thermal imaging device on a home constituted a "search" under the Fourth Amendment. The Government argued that it did not because the device detected "only heat radiating from the external surface of the house," or in other words, that there is no expectation of privacy in the air around one's house. *Id.* at 35. The Court disagreed, concluding that this was "a mechanical interpretation" of the Fourth Amendment and that it was the information the device revealed about activities within the home that was the proper focus. *Id.*[2] After *Kyllo*, a view that police conduct is not

---

[2] Although the majority opinion in *Kyllo v. United States*, 533 U.S. 27 (2001), did not discuss *United States v. Place*, 462 U.S. 696 (1983), some courts have concluded that *Kyllo* undermines the logic behind a conclusion that dog sniffs are not searches. *See, e.g., People v. Haley*, 41 P.3d 666, 671 n.2 (Colo. 2001). This view is buttressed by the dissent in *Kyllo*, which argued that the majority's reasoning was inconsistent with *Place*. *Kyllo*, 533 U.S. at 47–48 (Stevens, J., dissenting). Although there may be some tension between the two decisions, the use of dog sniffs and thermal imaging devices can be distinguished in that thermal imaging devices reveal both less and more than a dog sniff. They reveal less in the sense that a

a search simply because it extracts information from the air around a protected object, rather than directly invading the object, may no longer be viable.

¶ 24. Concerned that the unrestrained use of canine sniffs would lead to unreasonable intrusions on individuals' legitimate expectations of privacy, a number of state courts have decided not to follow the federal rule when interpreting their own state constitutions and instead have concluded that dog sniffs can be searches. *See Pooley v. State*, 705 P.2d 1293 (Alaska Ct. App. 1985); *People v. Unruh*, 713 P.2d 370 (Colo. 1986); *People v. Cox*, 739 N.E.2d 1066 (Ill. App. Ct. 2000); *State v. Pellicci*, 580 A.2d 710 (N.H. 1990); *People v. Dunn*, 564 N.E.2d 1054 (N.Y. 1990); *Commonwealth v. Johnston*, 530 A.2d 74, 79 (Pa. 1987) ("[I]t is our view that a free society will not remain free if police may use this, or any other crime detection device, at random and without reason."). For example the court in *Pellicci* stated:

> Employing a trained canine to sniff a person's private vehicle in order to determine whether controlled substances are concealed inside is certainly a search .... The drug detection dog discerned something not otherwise apparent to the officers through their own senses, aided or unaided, and advised them of what the dog had discovered by means the officers could perceive. The very purpose of bringing the dog to the vehicle was to have it detect any contraband that might

thermal imaging device does not detect illegal activity directly, but only determines how much and where heat is emanating from a home. Thermal imaging devices reveal more because details learned through such devices may have nothing to do with illegal activity. An example provided by Justice Scalia in *Kyllo* was that a thermal imaging device could reveal "at which hour each night the lady of the house takes her daily sauna and bath." *Id.* at 38.

be hidden inside. The sniff, in short, was a prying by officers into the contents of Pellicci's possession, which, concealed as they were from public view, could not have been evident to the officers before the prying began.

580 A.2d at 716. New York's highest court similarly rejected *Place*'s view that dog sniffs are not searches because they disclose only evidence of criminality: "Notwithstanding such a method's discriminate and nonintrusive nature, it remains a way of detecting the contents of a private place. Thus, our analysis should more appropriately focus on whether there has been an intrusion into an area where an individual has a reasonable expectation of privacy." *Dunn*, 564 N.E.2d at 1057–58 (citations omitted).[3]

¶ 25. These courts have generally followed Justice Blackmun's suggestion in his concurrence in *Place*, and held that dog sniffs can be searches, but because of their minimal intrusiveness, they are akin to a *Terry* stop, and thus require only reasonable suspicion before they can be conducted on a person or object in which a person possesses a privacy interest. *But see Commonwealth v. Martin*, 626 A.2d 556 (Pa. 1993) (holding that probable cause is required when a dog sniff is performed on a person). This conclusion is consistent with the leading treatise on search and seizure, which also suggested that courts find a middle ground between a

---

[3] *See also United States v. Beale*, 736 F.2d 1289, 1293 (9th Cir. 1984) (Pregerson, J., dissenting). Judge Pregerson wrote:

> When using dogs to ferret out contraband, the police are not simply walking around hoping to come across evidence of a crime. Instead, they are investigating. They are trying to find something. They are seeking evidence in hidden places. If this activity does not qualify as a "search" then I am not sure what does.

full warrant requirement and no requirement at all. 1 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 2.2(f), at 461–64 (3d ed. 1996).

¶ 26. The application of art. I, § 11 to canine sniffs has not yet been decided, even by *Garcia*, which limited its consideration to the federal constitution. And I find persuasive the reasoning of the various commentators and out-of-state decisions that have rejected *Place*, and concluded that dog sniffs are searches under their state constitutions. Although the Wisconsin Supreme Court has generally held that our search and seizure law under art I., § 11 should conform to Supreme Court jurisprudence, *e.g.*, *State v. Guy*, 172 Wis. 2d 86, 93, 492 N.W.2d 311 (1992), it is also true that we may interpret state constitutional provisions more expansively than does the Supreme Court with respect to their federal counterparts, *State v. Hansford*, 219 Wis. 2d 226, 242, 580 N.W.2d 171 (1998). Further, our supreme court has recently stated that it should not act "as [a] mere rubber stamp[ of the U.S. Supreme Court]" when interpreting art. I, § 11 and that it "is our responsibility to examine the State Constitution independently." *State v. Ward*, 2000 WI 3, ¶ 59, 231 Wis. 2d 723, 604 N.W.2d 517. Because our supreme court generally follows the Supreme Court's view of federal counterparts to the Wisconsin Constitution, this court is not free to ignore that jurisprudence. This case, however, would serve as a vehicle to provide Wisconsin residents with protection against random dog-sniff searches that the residents of Alaska, Colorado, Illinois, New Hampshire, New York and Pennsylvania enjoy.