# WASHINGTON COUNTY, Plaintiff-Appellant,
## v.
# Allen R. LUEDTKE, Defendant-Respondent.

Supreme Court

*No. 85–2306. Argued November 24, 1986.——Decided January 28, 1987.*

(On certification from the court of appeals.)

(Also reported in 399 N.W.2d 906.)

For the plaintiff-appellant there was court of appeal's brief by *Barbara A. Michaels,* assistant district attorney, West Bend, and oral argument by *Barbara A. Michaels.*

For the defendant-respondent there was court of appeal's brief by *Ronald Roensch,* and *Bunk, Doherty & Griffin, S.C.,* West Bend, and oral argument by *Ronald Roensch.*

HEFFERNAN, CHIEF JUSTICE. This is an appeal from the circuit court for Washington county, accepted on certification of the court of appeals pursuant to sec. 809.61, Stats.[1] The order of the circuit court dismissed the prosecution brought against Allen R. Luedtke for an alleged speeding violation. We accepted

---

[1] "809.61 Rule (Bypass by certification of court of appeals or upon motion of supreme court). The supreme court may take jurisdiction of an appeal or other proceeding in the court of appeals upon certification by the court of appeals or upon the supreme court's own motion. The supreme court may refuse to take jurisdiction of an appeal or other proceeding certified to it by the court of appeals."

the certification because different panels of the court of appeals have given different interpretations to the fourth criterion of the *Hanson/Kramer* test for establishing a prima facie presumption of the accuracy of a moving radar device to establish the speed of a vehicle.[2]

The fourth criterion requires that the input speed of the patrol car must be verified. The certification of the court of appeals informed us that two decisions of panels of the court of appeals have held that, to use the speedometer reading to verify the patrol car's speed, there must be proof at trial that the patrol car's speedometer has been recently certified to be correct by an external testing device such as a trackmeter. A third decision of a panel of the court of appeals has held that the radar speedmeter's reading of the patrol car's speed is sufficiently verified by a determination that it corre-

---

[2] The *Hanson/Kramer* test (*State v. Hanson*, 85 Wis. 2d 233, 245, 270 N.W.2d 212 (1978), and later approved and explained in *State v. Kramer*, 99 Wis. 2d 700, 703, 299 N.W. 2d 882 (1981)) requires the prosecution to establish:

"1. The officer operating the device has adequate training and experience in its operation.

"2. That the radar device was in proper working condition at the time of the arrest. This will be established by proof that suggested methods of testing the proper functioning of the device were followed.

"3. That the device was used in an area where road conditions are such that there is a minimum possibility of distortion.

"4. That the input speed of the patrol car must be verified, this being especially important where there is a reasonable dispute that road conditions may have distorted the accuracy of the reading (*i.e.*, presence of large trucks, congested traffic and the roadside being heavily covered with trees and signs).

"5. That the speed meter should be expertly tested within a reasonable proximity following the arrest and that such testing be done by means which do not rely on the radar device's own internal calibrations."

sponds to the patrol car's speedometer reading.[3] We agree with that third decision. Because in the instant case the circuit judge, upon finding that there had not been proof that the car's speedometer was correct, dismissed the prosecution, we reverse and remand the case for further proceedings.

The record shows that Washington County Deputy Sheriff, Robert G. Weddig, using a moving radar unit,[4] clocked the defendant Allen R. Luedtke, at a speed of 78 m.p.h. He was issued a citation for speeding and was brought to trial in the circuit court for Washington county.

---

[3] Some of the uncertainty in applying the *Hanson/Kramer* criteria may arise out of a confusion of terms. For example, the respondent herein, in its brief, rewrites the fifth criterion of the test to refer to the "speedometer," assuming perhaps that the use of the term, "speedmeter," in the criteria was erroneous. It was not. The speedmeter is that portion of the radar device that displays the speed of the respective vehicles. It is the end product measurement of the radar device. As used in criterion five, "speedmeter" refers to the radar device itself. Note, *Radar Speed Detection: Homing in on New Evidentiary Problems*, 48 Fordham L. Rev. 1138, n. 2 (1980), states:

> "Prior to the development of radar, other devices were used to measure speed. These included the stopwatch, speedometer (*not to be confused with the radar speedmeter*), photographic techniques, and various electromechanical devices such as the 'Speedwatch.'" (Emphasis supplied.)
> It should be noted that at least one of the court of appeals' unpublished opinions misread criterion five to refer to the patrol car's speedometer.

[4] *Radar Speed Detection, supra*, at 1141, n. 23, points out that moving radar speedmeters are an outgrowth of earlier stationary radar speedmeters. The moving radar speedmeter allows a moving patrol car to measure the speed of an approaching vehicle. Radar devices that cannot be used while the patrol car is in motion are known as stationary radar speedmeters. Modern speedmeters can be switched from one mode to the other.

Officer Weddig testified that he clocked the speed of the Luedtke car at 78 m.p.h. in a 50 m.p.h. zone. At the time the Luedtke car was clocked, the radar device showed that the speed of the patrol car was 51 m.p.h. Simultaneously, Weddig verified the input speed by a visual inspection of the patrol car's speedometer. He found that the speeds corresponded. The readout on the speedmeter computed the speed of the Luedtke car to be 78 m.p.h.

Weddig also testified that he had received formal training in the use and operation of the radar device and that he was certified to operate it. He also testified that, about two hours prior to issuing the citation to Luedtke, he had conducted a series of tests to verify the accuracy of the radar unit. These included an internal circuitry test and a light bar test. These tests utilize the radar device's internal calibrations to assure accurate operation. In addition, he used external devices to test the speedmeter. These consisted of tuning forks calibrated for 35 m.p.h. and 65 m.p.h. (see, Kramer, 99 Wis. 2d at 702) in both the stationary and moving modes. He testified that he performed the same tests ten minutes after issuing the citation to Luedtke. On both occasions, he found that the radar device was working properly. He also testified that there were no traffic or topographical conditions that could have distorted the radar's readout of Luedtke's speed.

Thus, there was complete compliance with guidelines 1 (training and experience of operator), 2 and 5 (proper testing of the device both before and after the actual use by tuning forks—a testing procedure that did not rely on the speedmeter's internal testing devices), and 3 (evidence that there were no distorting conditions at the time of the offense).

What the prosecution did not prove and did not attempt to prove was that the speedometer on the patrol car was certified to be accurate as the result of prior testing.[5]

Following Officer Weddig's testimony, counsel for Luedtke argued that, for the prima facie presumption of the radar's accuracy to apply, there must be proof of the accuracy of the patrol car's speedometer—the device used to verify visually the speed of the patrol car determined by the radar device. Upon defense counsel's motion, the case was dismissed for the failure to produce proof of the accuracy of the patrol car's verifying speedometer. Although the trial court filed no opinion and did not explicate its rationale, it is apparent that it believed that a verification from a visual inspection of a

---

[5] During the course of trial, defense counsel asserted, and this was corroborated by both counsel in this court, that Washington county periodically certified the accuracy of the speedometers of its patrol cars. It was pointed out that verifiable accuracy of patrol car speedometers was essential in circumstances when speeds were ascertained by "pacing," *i.e.*, following a suspect vehicle and ascertaining speed by keeping a constant distance until the speed could be determined. This type of speed detection is useful in circumstances of traffic or topography when radar cannot be used.

Hence, there probably could have been a certification of the accuracy of the patrol car's speedometer produced in court. The prosecutor for the county, Assistant District Attorney Michaels, chose not to produce such proof because she thought, correctly, that such proof was unnecessary. Ms. Michaels stated at oral argument in this court that, as a matter of law enforcement policy, in the event the speedmeter readout on the radar varied by more than 2 m.p.h. from the patrol car's speedometer reading, no citation would be issued, because it could be surmised that either the officer's visual verification was faulty or the radar device was not operating properly.

speedometer that was not proved in court to be accurate was not sufficient verification as required by criterion 4.

In the instant case, only a matter of law is at issue—the interpretation of criterion 4 of the *Hanson/ Kramer* standards: "[T]he input speed of the patrol car must be verified." We need not defer to the trial court in this case, nor to the conclusions of panels of the court of appeals in related cases which have been called to our attention by the certification. *Ball v. District No. 4, Area Board,* 117 Wis. 2d 529, 537, 345 N.W.2d 389 (1984).

Initially, it should be re-asserted that the *Hanson/ Kramer* criteria have but one purpose—the assurance that the particular radar device is in proper operating condition and is used by a trained operator in the manner intended. The court has taken judicial notice of the scientific accuracy of the "Doppler effect" in determining speed when a device for measuring the microwave echoes is in proper working order. *Hanson,* 85 Wis. 2d at 238. If there is compliance with the *Hanson/Kramer* criteria, the speedmeter readout is presumptively correct and is to be admitted into evidence.

This court has never held that proof, by evidence of separate testing, of the accuracy of a patrol car's speedometer was required to trigger the prima facie presumption of the radar device's accuracy. All that is required to verify or corroborate the radar-determined speed of the patrol car is a visual inspection, at the appropriate time, of the patrol car's own speedometer. Therefore, it was error for the trial court to dismiss the prosecution against Luedtke on the ground that the prosecution

failed to introduce evidence that the patrol car's speedometer had been tested and was accurate.

*Hanson* contains no intimation that there need be any external testing of the patrol car's speedometer. *Hanson* is predicated upon the premise that it is the radar device that must be subjected to testing—testing by use of internal testing devices, external testing devices such as tuning forks, and testing by a comparison of the radar readout patrol car speed to the speedometer reading. *Hanson* points out that the visual inspection of the patrol car's speedometer reading is one of the "important safeguards in ascertaining an accurate radar reading." 85 Wis 2d at 244. Criterion 4 states: "[T]he input speed of the patrol car must be verified." *Hanson* requires no more in this respect.

It is the language of *Kramer* that is relied upon for the view that the speedometer reading can only be used for verification when evidence is produced that the speedometer has been certified to be correct by recognized testing means. *Kramer* was concerned with the sufficiency of the arresting officer's testimony in respect to the fifth criterion of *Hanson*—"That the speed meter should be expertly tested." It was argued by the defendant there that the police officer's testimony was insufficient because the officer was not an expert, that the tuning fork test relied upon the speedmeter's internal checking devices, and, furthermore, that the tuning forks themselves could only be used to prove the device's accuracy if they had in turn been tested and certified to be accurate. All of these contentions were rejected.

The *Kramer* court did comment upon the fact that the state, in proof of the fifth criterion, mistakenly introduced proof that the patrol car's speedometer had been tested by a trackmeter and was certifiably accu-

rate. The *Kramer* court recognized that this submission of evidence was misplaced to support compliance with the fifth criterion, which is concerned with the speedmeter, the radar device, and not the speedometer of the patrol car, which is referred to in criterion 4. Defendants in *Kramer* apparently misread the fifth criterion.

This court in *Kramer*, therefore, pointed out that only in the fourth criterion was a speedometer reading even mentioned. Therefore, "it is more reasonable to consider evidence of the periodic certification of the speedometer under the fourth criterion." 99 Wis. 2d at 704. This statement pointed out to counsel in *Kramer* that the *Hanson* criteria had not been read accurately. It was dicta, given the actual issue posed, the testing of the speedmeter. *Kramer* never suggested that certification of the patrol car's speedometer was required by any of the criteria. There is no requirement to be found that prosecutors must produce testimony that the patrol car's speedometer had been checked and found to be accurate.

The *Kramer* court stated that the evidence, if introduced, did not have any relevance to the fifth criterion, the testing of the speedmeter by internal or external controls. Only criterion 4 had anything to do with the speedometer, but evidence of its accuracy was not required. Hence, even with respect to criterion 4, such evidence—proof of the speedometer's accuracy—is irrelevant. Irrelevant evidence is not admissible. Rule 904.02.

That all that is required for verification of the input speed is the visual inspection of the speedometer is repeatedly stated in *Kramer*:

> "[T]he fourth *Hanson* criterion calls for verification of the input speed of the patrol car, a proce-

139

dure which involves visual comparison of the speed as shown on the radar unit with the speed as shown on the patrol car's speedometer." 99 Wis. 2d at 704.

After a discussion of the use of tuning forks to ascertain the correct functioning of the radar device, both before and after the issuance of the citation, *Kramer* points out that there is also the contemporaneous verification:

"It should also be noted that the fourth *Hanson* criterion requires the operating officer to verify the patrol car's input speed by using the radar device's verification mechanism. The officer can then visually compare the vehicle's [the patrol car's] speed as measured by the radar device with the speed as registered on the vehicle's speedometer." *Kramer* at 706–07.

Neither of these statements in *Kramer* permit an inference that more need be done for verification of input speed than is expressly required.

Additional support comes from the underlying rationale of *Kramer*. It was contended in that case that the tuning forks used to test the radar device should themselves be tested and certified to be correct. *Kramer* stated that the tuning forks need not be tested:

"The risks relative to tuning fork inaccuracy were minimized, as it is unlikely that the radar device and both tuning forks would be inaccurate to precisely the same extent. To require proof of accuracy of a tuning fork by still some other testing device would create a sequence of tests to verify tests which raises the same proof problem at each level. There must be a point in the sequence at which the accuracy of a test device is accepted. The presumption of accuracy which *Hanson* accords radar speed

detection devices does not require proof of the accuracy of a tuning fork used to test them." 99 Wis. 2d at 706.

The same rationale impels the conclusion that the speedometer need not be independently certified to be correct. The devices relied upon need not be tested ad infinitum. The likelihood of the radar device and the speedometer being skewed to the degree that each would show the same erroneous speed was acknowledged by defense counsel to be infinitesimal. Moreover, as was stated in oral argument, the county law enforcement policy requires that, if verification cannot be made— *i.e.*, if there is a variance of more than 2 m.p.h. between the speedometer reading and the radar readout—no citation will be issued. The fact that the automobile speedometer in itself has no effect upon the operation of the radar device makes the automobile speedometer, like the tuning fork, an appropriate independent external check upon the radar device's accuracy.

The requirement for "checks upon checks" would be costly and time-consuming and would defeat the law enforcement policy stated in both *Hanson* and *Kramer* that the proof of a speeding violation dependent upon radar be provable by the testimony of a single arresting officer who can show that the *Hanson/Kramer* criteria were satisfied.

A careful reading of *Kramer* reveals nothing from which a requirement, or even an endorsement, of a speedometer "check" can be inferred. We hold that the fourth criterion of *Hanson/Kramer* is met by testimony that verification has been accomplished by a visual comparison of the speedometer with the radar readout. It is unnecessary, indeed irrelevant to the prosecution's proof, to establish that the patrol car's speedometer has

141

been separately checked and certified to be correct. *Kramer* in no way expanded any of the *Hanson* criteria.

*By the Court.*—Order reversed and cause remanded for further proceedings.