Dane County, Plaintiff-Respondent,
v.
Kenneth R. McGrew, Defendant-Appellant.
No. 03-1794.
Court of Appeals of Wisconsin.
Opinion Filed: March 25, 2004.
¶ 1. LUNDSTEN, J.[1]
Kenneth McGrew appeals a judgment of the circuit court convicting him of speeding in violation of Wis. Stat. § 346.57(4)(h). He also appeals an order denying his motion for judgment notwithstanding the verdict. McGrew argues: (1) reversal in the interest of justice is warranted because the testimony of the arresting officer is internally inconsistent and incredible as a matter of law; (2) McGrew's due process rights were violated because he was denied access to discovery materials; (3) the circuit court improperly admitted evidence based on a speedometer that had not been certified before the incident; (4) the vehicle code discovery statute, Wis. Stat. § 345.421, is unconstitutional because it violates equal protection; and (5) the applicable six-person jury statute, Wis. Stat. § 756.06(2)(c), is unconstitutional because it violates McGrew's right to a twelve-person jury. We reject all of McGrew's arguments and affirm.

Background
¶ 2. Kenneth McGrew was driving on a highway when he was pulled over and issued a citation for speeding. The officer who conducted the stop, Deputy Novotny, was engaged in "motor service patrol" and was operating a marked F-250 quad-cab pickup truck. Deputy Novotny testified that he was traveling approximately 55 miles per hour in a 55 mile per hour zone when he first noticed McGrew's vehicle approaching from behind traveling "noticeably faster." Deputy Novotny visually estimated McGrew's speed at 75 miles per hour and then, after McGrew passed, Novotny determined McGrew's speed to be 80 miles per hour by "pacing" McGrew's car.
¶ 3. Deputy Novotny stopped McGrew and issued him a citation for driving 79 miles per hour in a 55 mile per hour zone. The charge was later amended to 80 miles per hour in a 55 mile per hour zone. McGrew demanded and received a jury trial and was found guilty.

Discussion

Reversal in the Interest of Justice
¶ 4. McGrew first argues that we should exercise our discretionary reversal power under Wis. Stat. § 752.35 because a miscarriage of justice has occurred. McGrew asserts that Deputy Novotny's testimony is inconsistent and incredible as a matter of law.
¶ 5. We exercise our discretionary reversal power only in exceptional cases. Vollmer v. Luety, 156 Wis. 2d 1, 11, 456 N.W.2d 797 (1990). To establish entitlement to a discretionary reversal based on a miscarriage of justice, a defendant must show that there is a "`substantial degree of probability'" that a new trial would lead to a different result. State v. Caban, 210 Wis. 2d 597, 610, 563 N.W.2d 501 (1997) (quoting State v. Wyss, 124 Wis. 2d 681, 734, 370 N.W.2d 745 (1985)).
¶ 6. Deputy Novotny testified that he was traveling about 55 miles per hour when he looked in his rearview mirror and saw McGrew's vehicle approaching. While looking in the rearview mirror, Deputy Novotny visually estimated McGrew's speed at about 75 miles per hour. After McGrew passed the deputy's truck, Novotny sped up to "pace" McGrew's vehicle, that is, to determine McGrew's speed with the police truck speedometer. Deputy Novotny testified that by using this method he determined that McGrew was traveling 80 miles per hour. McGrew testified and gave several reasons why the officer's testimony could not be true.
¶ 7. McGrew essentially argues that Deputy Novotny's testimony that he paced McGrew's car at 80 miles per hour was incredible as a matter of law because it is inconsistent with other parts of the deputy's testimony. McGrew explains why, if some of the details supplied by Deputy Novotny are accurate, Novotny could not have sped up and paced McGrew's car at 80 miles per hour in the distance Novotny himself describes.[2]
¶ 8. McGrew has a high burden. Testimony is "incredible as a matter of law" when it conflicts "with the uniform course of nature or with fully established or conceded facts." Posnanski v. City of West Allis, 61 Wis. 2d 461, 466 n.2, 213 N.W.2d 51 (1973) (citations omitted). The flaw in McGrew's argument is that he implicitly assumes the jury was required to accept as accurate several of the details of Deputy Novotny's testimony, such as where Novotny was when he first observed McGrew. However, jurors are free to believe part of a witness's testimony while disbelieving other parts. See Penister v. State, 74 Wis. 2d 94, 103, 246 N.W.2d 115 (1976). For example, the jury could have believed the deputy when he said he paced McGrew at 80 miles per hour and, at the same time, thought the deputy must have been wrong when he testified about his location when he began his effort to pace McGrew. Moreover, the deputy was precise about the pacing speed, but was less precise when testifying about other aspects of the stop. For example, when McGrew's counsel pushed the deputy to say how long it took to accelerate, the deputy said: "I would just be guesstimating. Probably ten [seconds]."[3]
¶ 9. McGrew has failed to persuade us that justice misfired in this case, and we decline to order a new trial in the interest of justice.

Alleged Discovery Violations
¶ 10. McGrew argues that he was denied due process because he was denied access to Deputy Novotny's incident report and the notations on the back of the citation. McGrew asserts that the report was "valuable because it strongly evinces a willingness [on behalf of Deputy Novotny] to fabricate evidence against McGrew." McGrew claims the report could have been used to impeach Deputy Novotny's testimony. The County's response is that there is no constitutional right to exculpatory evidence in a non-criminal case and, even if there were, the circuit court was correct in determining that the evidence sought by McGrew was not exculpatory. We conclude that McGrew has failed to show that the evidence was exculpatory. Thus, we need not address whether McGrew had a constitutional right to exculpatory evidence.
¶ 11. McGrew first argues that "[a]ccess to the incident report [written by Deputy Novotny] would have allowed McGrew to impeach Deputy Novotny with his false assertion that he clocked McGrew at 82 mph."[4] McGrew contends that the radar unit used by Deputy Novotny was a "rear-facing stationary radar device" that "could not be used while the [police truck] was moving." McGrew insists that the truck speed of 55 miles per hour would have made it impossible for Deputy Novotny to get a radar reading of 82 miles per hour on a vehicle that was traveling 82 miles per hour. McGrew argues that if he were going 82 miles per hour, and Novotny was going 55 miles per hour, stationary radar would have gauged McGrew's speed as 27 miles per hour, the difference in speed between the two vehicles. McGrew contends that if he had been given access to the incident report, he would have been able to show that Deputy Novotny's radar testimony was false.
¶ 12. We agree with the County's response: "[W]e are simply not in a position to evaluate what is possible with a stationary radar device because [McGrew] made no attempt to put any evidence in the record on such a device's abilities or manner of reporting speed readings." We also agree with the County that, although the display board to which the radar device was attached was to be used while stationary, there is no evidence that the radar clocking device cannot be used in a moving mode. In sum, we concur with the County's assessment that there is insufficient evidence to show that the radar unit could not have yielded a result consistent with the incident report and with Deputy Novotny's testimony.
¶ 13. McGrew also argues that the statements contained in the incident report are inconsistent with Deputy Novotny's trial testimony that the deputy exceeded McGrew's speed in order to catch up with McGrew. The report, however, does not say that Deputy Novotny did not exceed 80 miles per hour to catch up with McGrew. Rather, it only says that the deputy "accelerated to a speed of 80 miles an hour." This is true even if the deputy also exceeded that speed to catch up with McGrew.
¶ 14. Finally, McGrew contends that Deputy Novotny's testimony regarding the manner in which McGrew slowed down is inconsistent with the version of the stop described in the incident report and on the back of the citation. McGrew states that the back of the citation indicates that McGrew had to slow down because of slower traffic before changing lanes. McGrew says the incident report more specifically states that traffic appeared to slow down and then McGrew merged into the left lane causing "one of the [other] vehicles ... to activate its brakes to avoid making contact with [McGrew]." McGrew argues that he could have used this information to impeach Deputy Novotny's trial testimony because the deputy's testimony did not include the assertion that McGrew was slowed by other traffic.
¶ 15. This argument is meritless. The time period at issue is after Deputy Novotny activated his emergency lights to stop McGrew. Obviously, McGrew would have responded by slowing down, and McGrew has failed to explain the significance of whether he was or was not slowed by other traffic. If this aspect of the stop had no apparent significance, then it follows that it was insignificant that Novotny omitted mention of it from his trial testimony.
¶ 16. McGrew also argues that he could have used the citation and incident report to impeach Deputy Novotny's trial testimony that a particular third vehicle was "merging onto the Beltline from Gammon Road." McGrew notes that neither the citation nor the incident report indicates that this third vehicle was merging from Gammon Road. Again, McGrew fails to explain the significance of this minor detail. Why does it matter that the third car was merging onto the Beltline?
¶ 17. We conclude that the circuit court was clearly correct when it determined there was nothing in the incident report or on the citation that was inconsistent with Deputy Novotny's testimony and nothing that could have been used effectively to impeach Novotny.
¶ 18. McGrew makes a second discovery violation argument. McGrew complains that he was ambushed at trial when the prosecutor played, without advance warning, a portion of an audio-tape of a radio interview McGrew gave in which McGrew discussed the circumstances surrounding his speeding ticket. In the short portion of the interview played for the jury, McGrew was asked how fast he was going, and he said: "I was not going the speed that he's charging me with going. And I'm not going to say how fast I was going." McGrew apparently contends that general due process principles entitled him to advance notice of the prosecutor's intended use of the tape and that he was harmed because he could have called his attorney who would have told the jury that the attorney instructed McGrew "not to discuss the particulars of the incident."
¶ 19. McGrew's argument is flawed in several respects. First, his due process argument has been waived. The only objection lodged at the time of trial was relevancy.
¶ 20. Second, McGrew's argument is factually undeveloped. From reading his brief, one might conclude that the prosecutor simply played the tape and asked McGrew to explain it. But the exchange was much more complicated than that.
¶ 21. Third, McGrew's appellate brief completely fails to provide legal support for the proposition that due process principles gave him the right to advance notice that the prosecutor might use a tape of the radio show (a show that was broadcast to the general public) in an attempt to impeach McGrew's testimony about what McGrew said during the radio show.
¶ 22. Fourth, even if error occurred, it was harmless beyond a reasonable doubt. When the prosecutor asked McGrew if he had refused to tell the radio interviewer how fast he was going, McGrew said: "I don't recall exactly what I said. I don't recall exactly that question. But, certainly, I was careful under attorney's instructions not to go beyond the fact that I was upset, that I thought the vehicle had not paced me and the officer wasn't telling the truth." In response to additional questions, McGrew said he could not recall what he told the interviewer about the speed he was traveling, but assumed he would have said he was going the speed limit. The tape verified that McGrew had declined to say how fast he was going. We conclude that, even if McGrew had advance warning about the tape, and even if he had called his attorney to testify, the result of the trial would have been the same. Even without testimony from an attorney, the jury would have understood that it made sense for McGrew not to discuss the particulars of a pending lawsuit.

Certification of the Police Vehicle Speedometer
¶ 23. McGrew next contends that the circuit court erred in admitting evidence based on the speedometer readings because the speedometer had not been certified prior to the incident. The County responds that prior certification is not required. We agree with the County.
¶ 24. McGrew relies on State v. Hanson, 85 Wis. 2d 233, 270 N.W.2d 212 (1978), and State v. Kramer, 99 Wis. 2d 700, 299 N.W.2d 882 (1981), for the proposition that the speedometer should have been certified prior to its use during the pacing of McGrew. McGrew argues that Hanson holds that testing of a speed radar device must occur before the arrest. He asserts this is true because Hanson held that, in order for a speed radar device to be accorded a presumption of accuracy, there are separate requirements that there be testimony the device was "in proper working condition at the time of the arrest" and testimony the device was tested after the arrest. See Hanson, 85 Wis. 2d at 245. McGrew argues that Kramer confirmed his interpretation of Hanson. Further, because Hanson and Kramer are radar cases, McGrew asserts Washington County v. Luedtke, 135 Wis. 2d 131, 399 N.W.2d 906 (1987), supports his view that these radar cases should be applied to the certification of speedometers.
¶ 25. McGrew overlooks City of Wauwatosa v. Collett, 99 Wis. 2d 522, 299 N.W.2d 620 (Ct. App. 1980). In Collett, we held that Hanson applied only to moving radar devices. Collett, 99 Wis. 2d at 523. All other recognized methods of measurement, including speedometers, are presumptively accurate, and whether they were properly used or in good working order is a matter for the defense. Id. at 523-24. The subsequent Luedtke decision does not hold otherwise. Luedtke notes that a party argued that the "verifiable accuracy of patrol car speedometers was essential in circumstances when speeds were ascertained by `pacing.'" Luedtke, 135 Wis. 2d at 136 n.5. This language falls far short of supporting McGrew's assertion that prior testing is necessary to verify the accuracy of a speedometer used to "pace" a suspected speeder.

Equal Protection Challenge to Wis. Stat. § 345.421
¶ 26. Wisconsin Stat. ch. 345 establishes a uniform procedure for most vehicle code violations. City of Lodi v. Hine, 107 Wis. 2d 118, 120, 318 N.W.2d 383 (1982). Wisconsin Stat. § 345.421 provides that neither party in a vehicle violation case is entitled to pretrial discovery, except that a defendant may ask the court to order the inspection and testing of certain items if the defendant moves the court for an order directing discovery within ten days of the alleged violation. McGrew argues that § 345.421 is facially unconstitutional because it denies equal protection to a class of civil litigants that includes him. McGrew asserts that the statute implicates a fundamental right, the right to hold a driver's license, and, therefore, the statute's disparate treatment of persons charged with vehicle code violations must be justified by a compelling state interest.
¶ 27. When a party challenges the constitutionality of a state statute, that party must notify the Attorney General pursuant to Wis. Stat. § 806.04(11). See Kurtz v. City of Waukesha, 91 Wis. 2d 103, 116-17, 280 N.W.2d 757 (1979) (§ 806.04(11) applies to all constitutional challenges to laws). We find no indication in the record that McGrew has given such notice. Accordingly, we reject McGrew's equal protection argument on that basis.
¶ 28. Moreover, even if we were to address the merits of McGrew's equal protection challenge, we would affirm the circuit court. The circuit court properly rejected the proposition that Wis. Stat. § 345.421 implicates a fundamental right and that the statute must, therefore, be subjected to strict scrutiny analysis. We also agree with the prosecutor and the circuit court that the legislature could have reasonably determined that the volume and nature of vehicle code cases warrants different treatment of discovery procedure as compared with the general run of civil cases.

McGrew's Claim that He Was Entitled to a Twelve-Person Jury
¶ 29. McGrew argues that the six-person jury statute applicable to forfeiture cases like his, Wis. Stat. § 756.06(2)(c), is unconstitutional. McGrew contends he is constitutionally entitled to a twelve-person jury. McGrew tacitly admits we have no power to address this topic, and he states he is raising the issue "[s]olely to preserve [it] for a possible petition for review to the Wisconsin Supreme Court." Accordingly, we do not address the issue. We also have not determined whether McGrew gave the required notice to the Attorney General pursuant to Wis. Stat. § 806.04(11).
By the Court.  Judgment and order affirmed.
NOTES
[1] This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(g) (2001-02). All further references to the Wisconsin Statutes are to the 1999-2000 version unless otherwise noted.
[2] McGrew also argues that Deputy Novotny's visual estimation of McGrew's speed (75 miles per hour) was erroneously admitted because it was "wholly unreliable." We will not address this argument because, even if we assume that Novotny's speed estimate itself was inadmissible, the importance of this testimony was not McGrew's actual speed, but rather that the officer's attention was drawn to McGrew because McGrew appeared to be speeding. The prosecutor was plainly entitled to introduce evidence of why Deputy Novotny's attention was drawn to McGrew.
[3] We question some of McGrew's assumptions. For example, McGrew does not know how fast the police pickup truck could accelerate from 55 to 80 miles per hour. He speculates that it must be about ten seconds, and attempts to support this speculation with the claim that a Porsche Boxster sports car "takes 8.9 seconds to accelerate from 50 mph to 70 mph." He relies on Car and Driver magazine, August 2003, for this fact. However, a quick review of this surprisingly slow Porsche acceleration rate reveals that the article is referring to "top gear" acceleration. That is, acceleration in the highest gear without downshifting for greater power. However, it is common knowledge that automatic transmissions drop to a lower gear for more power when the gas is floored, and that drivers of manual transmission vehicles manually downshift when they want to speed up quickly. We also note that the same Car and Driver article reports that a Boxster can go from 0 to 60 miles per hour in six seconds. This information suggests that a Boxster does not need almost nine seconds to accelerate from 50 to 70 miles per hour. But this is a digression. This court is not in the business of fact finding, and the Boxster information is irrelevant.
[4] McGrew also asserts that "the County circumvented the ruling barring radar evidence by having Deputy Novotny testify that the radar reading he received did not contradict his estimation of McGrew's speed." However, our review of the record indicates that it was McGrew himself who told the jury about the radar reading before Deputy Novotny testified. Without being asked about radar, McGrew told the jury during a narrative answer that Deputy Novotny told McGrew "he pulled me over because he had me going as fast as 83 miles an hour on rear-facing radar."