COURT OF APPEALS
DECISION
DATED AND FILED

May 2, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2022AP1229-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF114

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

BRENDA MARIE KORNMEYER,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Crawford County: LYNN M. RIDER, Judge. *Affirmed*.

Before Graham, Nashold, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Brenda Kornmeyer appeals a judgment of conviction for operating a motor vehicle with a detectable amount of a restricted controlled substance in her blood. She argues that the circuit court erred in denying her motion to suppress evidence from a traffic stop and a search of her car. Specifically, she argues that the officer who stopped her lacked reasonable suspicion for the stop and probable cause for the search. We affirm.

*Standard of Review*

¶2     This court reviews the grant or denial of a suppression motion under a two-part standard of review. *State v. Adell*, 2021 WI App 72, ¶14, 399 Wis. 2d 399, 966 N.W.2d 115. We uphold the circuit court's factual findings unless the court's findings are clearly erroneous, but we review de novo the legal question of whether the facts satisfy a constitutional standard such as reasonable suspicion or probable cause. *Id.*

*Reasonable Suspicion for the Traffic Stop*

¶3     We first address whether there was reasonable suspicion for the traffic stop. *See State v. Floyd*, 2017 WI 78, ¶20, 377 Wis. 2d 394, 898 N.W.2d 560 ("Reasonable suspicion that a driver is violating a traffic law is sufficient to initiate a traffic stop.").

¶4     "Reasonable suspicion requires that '[t]he officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion of the stop.'" *Id.* (quoted source omitted). Courts assess reasonable suspicion based on the totality of the circumstances. *State v. Allen*, 226 Wis. 2d 66, 74, 593 N.W.2d 504 (Ct. App. 1999). Here, Kornmeyer argues that the circuit court erred by failing to

consider the totality of the circumstances and by making credibility determinations that were clearly erroneous. We reject these arguments.

¶5 The relevant facts come from the suppression hearing.[1] The witnesses at the hearing included the officer who stopped Kornmeyer and searched her car, Kornmeyer, and one of Kornmeyer's passengers.

¶6 The officer testified as follows. On the night of the stop he was driving southbound on a highway when he noticed another car driving toward him northbound. He activated his moving radar unit and clocked the car speeding at sixty-one miles per hour. As the car passed the officer, he observed that the car's rear license plate was "not illuminated [at] the proper distance." The officer turned his squad car around to catch up to the car he had observed as it went around a bend. By the time he came around the bend, the officer could no longer see the car's taillights. The officer then observed that the car had pulled into a driveway off the highway. He identified the car as the same car that he had clocked speeding because it was the same model and because he had "verified th[e] plate as well." The officer pulled in behind the car and activated his emergency lights. Kornmeyer was identified as the driver of the car.

¶7 Kornmeyer testified that she did not believe that she was speeding. She also testified that she had checked that night to make sure that the car's blinkers "and all those lights were working," although she could not recall if she had looked at the license plate lamp. Kornmeyer's passenger also testified that

---

[1] In this part of our opinion, we summarize only those facts relevant to whether there was reasonable suspicion for the traffic stop. We summarize additional facts later when we address whether there was probable cause for the search of Kornmeyer's car.

Kornmeyer was not speeding. The passenger testified that Kornmeyer was driving under fifty-five miles per hour and that she had to remind Kornmeyer to drive faster so they would not be stopped for driving too slowly. The passenger also testified that they had checked the blinkers and "all that stuff" before driving the car and that the rear license plate lamp had been working.

¶8    The circuit court concluded that the officer lawfully stopped Kornmeyer based on a speeding violation. It found that the testimony from Kornmeyer and the passenger that Kornmeyer was not speeding was incredible and that the officer's testimony was "considerably more trustworthy." The court also found that the testimony from Kornmeyer and the passenger relating to checking the car lights before driving was incredible, but the court also stated that "I don't put a lot of weight onto the dim light."

¶9    Kornmeyer argues that the circuit court failed to consider the totality of the circumstances by limiting its analysis to the speeding violation and disregarding the officer's claim that he had observed a license plate lamp violation. This argument lacks merit because the court's decision does not reflect that it disregarded the alleged license plate violation. Rather, as noted, the court found that Kornmeyer's testimony and the passenger's testimony relating to the alleged license plate lamp violation were incredible, but decided not to "put a lot of weight onto the dim light." The court's statement could be interpreted in different ways, but it does not show that the court failed to consider the totality of circumstances.

¶10    Kornmeyer next argues that the circuit court made credibility determinations that were clearly erroneous. Specifically, she argues that the court should not have credited the officer's testimony relating to the alleged traffic

violations because the officer could not realistically have done everything that he claimed to have done in the brief amount of time that he was passing her on the highway. In support of this argument, she points to the following portion of the officer's testimony:

> I was patrolling southbound on Highway 35 near the Lansing bridge. Ms. Kornmeyer's vehicle was operating northbound on Highway 35.
>
> I activated my moving radar and clocked the vehicle moving at 61 miles an hour. And I had that for approximately four or more seconds before the vehicle passed my location.
>
> As the vehicle passed my location, I could observe that the rear license plate lamp was not illuminated the proper distance.

Kornmeyer argues that this portion of the officer's testimony is incredible because, if the officer's claims were all true, "[t]hey would have required the officer to have simultaneously had eyes on the radar, the license plate, and the road, all in the brief amount of time it took the two cars to pass each other on the highway."

¶11 We conclude that this credibility argument lacks merit. As Kornmeyer acknowledges in her briefing, witness credibility is "within the circuit court's wheelhouse as the trier of fact." In other words, "we must accept the [circuit] court's credibility determination[s]." *Noble v. Noble*, 2005 WI App 227, ¶27, 287 Wis. 2d 699, 706 N.W.2d 166. Although there is an exception for testimony that is "inherently or patently" incredible, the officer's testimony clears that low bar. *See State v. Jacobs*, 2012 WI App 104, ¶17, 344 Wis. 2d 142, 822 N.W.2d 885 ("[O]nly when testimony is inherently or patently incredible will this court substitute its judgment for that of the fact finder.").

5

¶12     Kornmeyer next appears to contend that the circuit court should not have credited the officer's testimony that she was speeding because the officer could not remember whether he tested his radar with tuning forks on the night of the stop.[2]  Kornmeyer points to a portion of the officer's testimony in which he stated that although he normally tested his radar unit with tuning forks every shift, he "didn't note" if he conducted the test on the night of the stop, and he could therefore only "assume" that he conducted the test that night.  For the following reasons, we are not persuaded by Kornmeyer's apparent argument on this issue.

¶13     First, although one reasonable inference from the officer's testimony is that he did *not* test his radar with tuning forks on the night of the stop, another reasonable inference, which is equally if not more plausible, is that he *did* because that was his normal practice.  Second, the officer testified that he verified the radar unit's accuracy that night by comparing his car's clocked speed on the radar with his speedometer speed.[3]  Finally, the officer testified that the radar unit was certified annually for proper operation and was up to date on its certification.  Kornmeyer points to no objective basis to doubt the radar's accuracy on the night of the stop.  *See* **State v. Gibson**, No. 2016AP1933-CR, unpublished slip. op. ¶15 (WI App Feb. 22, 2017) ("Without a reason to doubt the radar unit at the time of

---

[2] Use of an external tuning fork is one of the accepted methods for determining the accuracy of a radar unit.  **State v. Kramer**, 99 Wis. 2d 700, 705, 299 N.W.2d 882 (1981).

[3] Verification by use of the patrol car speedometer is "prima facie" evidence to support a presumption that the radar unit is accurate.  **Washington Cnty. v. Luedtke**, 135 Wis. 2d 131, 137, 399 N.W.2d 906 (1987).

the stop, [an officer]'s reliance on the reading on the unit provided him with reasonable suspicion to temporarily detain [the suspect]."). [4]

*Probable Cause to Search Kornmeyer's Car*

¶14     We turn to Kornmeyer's argument that the officer lacked probable cause for the search of her car.  As a general rule, "the warrantless search of an automobile is justified when a police officer has probable cause to believe that an automobile, found in a public place, contains evidence of a crime."  ***State v. Secrist***, 224 Wis. 2d 201, 210, 589 N.W.2d 387 (1999).

¶15     "Probable cause is an objective test that 'requires an examination of the totality of the circumstances.'"  ***State v. Moore***, 2023 WI 50, ¶8, 408 Wis. 2d 16, 991 N.W.2d 412 (quoted sourced omitted).  It requires more than a reasonable suspicion that a car contains evidence of a crime, but it "does not require proof beyond a reasonable doubt or even that guilt is more likely than not."  ***Id.*** (internal quotation marks and quoted sources omitted).  The test "eschews technicality and legalisms in favor of a flexible, common-sense measure of the plausibility of particular conclusions about human behavior."  ***State v. Kiper***, 193 Wis. 2d 69, 83, 532 N.W.2d 698 (1995) (internal quotation marks and quoted sources omitted).

¶16     Here, the officer who stopped Kornmeyer had a police dog with him, and the dog "alerted" to the existence of controlled substances on the exterior passenger side of Kornmeyer's car.  Kornmeyer argues that the dog sniff was unreliable and that, without a reliable dog sniff, the totality of the circumstances

---

[4] We cite this authored, unpublished opinion for its persuasive value pursuant to WIS. STAT. RULE 809.23(3)(b).

do not show probable cause to search her car. Based on the totality of the circumstances, we conclude that there was probable cause to search Kornmeyer's car.

¶17 Kornmeyer's argument is based on *State v. Miller*, 2002 WI App 150, ¶12, 256 Wis. 2d 80, 647 N.W.2d 348. She cites *Miller* to argue that the reliability of a dog sniff hinges on a three-part test that requires the State to show: (1) that the dog is trained in narcotics detection; (2) that the dog has demonstrated a sufficient level of reliability in detecting drugs in the past; and (3) that the officer handling the dog is familiar with how it reacts when it smells contraband. Kornmeyer argues that the dog sniff here was not reliable because the officer's testimony did not demonstrate that the dog had reliably detected drugs in the past.[5]

¶18 Although Kornmeyer has accurately described the test that the court applied in *Miller*, we conclude that this test is not dispositive here. The court in *Miller* was addressing whether a dog sniff is, by itself, sufficient to establish probable cause. *See id.*, ¶¶1, 12-14. Here, in contrast, the dog sniff was one factor among many relevant factors in the totality of the circumstances considered to establish probable cause. As we now discuss, the officer's testimony established that there were a number of additional relevant factors, and Kornmeyer does not challenge the officer's testimony on these points. We now summarize these additional relevant factors based on the officer's testimony.

¶19 Just before the officer pulled in behind Kornmeyer's car, he noticed that all of the car's lights had been turned off except for an interior "dome" light.

---

[5] Kornmeyer does not seriously dispute that the officer's testimony at the suppression hearing satisfied the other two parts of this three-part test.

He then observed Kornmeyer "duck[] back down into the vehicle and start[] making a lot of furtive motion[s]," including "reaching around," and "lean[ing] into the vehicle a little bit further and then sit[ting] back into the vehicle." The officer associated these type of movements with "trying to … hide something or to reach for something."

¶20    In speaking with Kornmeyer, the officer noticed that she was very talkative and speaking rapidly, "essentially rambl[ing] on." Based on his training and experience, he associated her rapid speech with the use of stimulant controlled substances. The officer also noticed that Kornmeyer was "very animated" when she spoke, had "exaggerated reflexes," and that she was "very fidgety" and would "not stop moving."

¶21    In addition, the officer observed that Kornmeyer's pupils appeared dilated, even under a direct source of light when a person's pupils would normally "restrict." He also observed that she appeared to have "a very dry mouth," which he associated with the use of stimulants. Additionally, the officer noticed that Kornmeyer had redness in one or both of her nostrils, which he associated with snorting controlled substances. The officer also noticed that "she had what appeared to be a burn mark on her lower lip." He asked Kornmeyer whether she had used any methamphetamine, and she stated: "Would I piss clean? No, I wouldn't."

¶22    Thus, to summarize, the totality of the circumstances here included not only the dog alert but also the following additional relevant factors: (1) Kornmeyer's apparent attempt to evade the officer by pulling off the highway

and turning off her car's exterior lights;[6] (2) Kornmeyer's furtive movements in the car suggesting that she was trying to hide or reach for something; (3) the officer's observation of multiple physical signs that Kornmeyer was under the influence of a controlled substance; and (4) Kornmeyer's statement to the officer that she would not "piss clean" in response to his inquiry into whether she was using methamphetamine. We conclude that these factors considered together show probable cause that Kornmeyer's car contained evidence of criminal activity, namely, use or possession of a controlled substance.

*By the Court.—*Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2021-22).

---

[6] Regarding this apparent attempt to evade the officer, the officer testified that Kornmeyer provided him with innocent explanations for pulling off the highway, but that "later, she ultimately admitted that she knew I was a squad car and didn't want to get pulled over, so she pulled in here to essentially hide and not get pulled over." The officer's testimony does not make clear whether Kornmeyer made this admission before or after he searched her car. Regardless, Kornmeyer's conduct in pulling off the highway and turning off her lights supports a reasonable inference that she was attempting to evade the officer.