Filed 5/9/23 P. v. Prince CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C096016 |
| Plaintiff and Respondent, | (Super. Ct. No. CR20203199) |
| v. | |
| KEITH PRINCE, | |
| Defendant and Appellant. | |

After the magistrate denied his Penal Code section 1538.5[1] motion to suppress evidence obtained in separate searches of two different vehicles, and the trial court denied his subsequent section 995 motion to set aside the information, defendant Keith Prince pled no contest to being a felon in possession of a firearm (§ 29800, subd. (a)(1)). In accordance with the plea, the trial court placed defendant on two years' formal probation. Defendant appeals contending the trial court erred in denying his motions to suppress and

---

[1] Undesignated statutory references are to the Penal Code.

1

set aside the information because: (1) the inventory search of the first vehicle was pretextual and unsupported by a community caretaking function; (2) the officer exceeded the scope of a reasonable inventory search; and (3) evidence and statements from subsequent searches were fruits of the illegal first search. Without addressing the substance of defendant's claims as to the searches of the first vehicle, the People contend defendant did not have a reasonable expectation of privacy in the first vehicle and there was an independent basis for the subsequent search of the second vehicle. We conclude any claims as to the second vehicle are forfeited; however, we agree with defendant that the search of the first vehicle exceeded the scope of a reasonable inventory search. Accordingly, we will reverse and remand.

The parties also agree the trial court erred in failing to delineate the statutory authorization of the fines and fees imposed. Given our conclusion that we must reverse and remand, we need not reach this claim.

## I. BACKGROUND

Sasha Wessitsh, a supervising ranger for the California State Parks, and his certified canine officer, Ben, were assigned to patrol the Broderick Boat Ramp area of West Sacramento in August 2020. This area includes a parking lot which is open 24 hours a day, seven days a week. Wessitsh generally patrolled the parking lot four times a week. During those patrols, he observed what he believed to be narcotics sales and prostitution.

In June 2020, Wessitsh stopped an unidentified person in a broken down vehicle with no license plates, registration, or identifying information. That person told Wessitsh he had purchased the vehicle from "Antwon." Wessitsh called Antwon and asked him to bring identifying documentation. Antwon arrived in a white Mercedes-Benz with a "very expired" vehicle registration. Antwon did not have his driver's license with him. Wessitsh gave Antwon a verbal warning about the vehicle registration and driver's license and told Antwon the next time he saw the white Mercedes, he was going to tow it.

2

While on patrol, Wessitsh had previously seen Antwon at the boat ramp frequently in different vehicles engaging in actions consistent with narcotics sales.

On August 3, 2020, Wessitsh saw the white Mercedes at the boat ramp again. The registration was still expired, and it had last been registered in March 2019. Wessitsh stopped the Mercedes. Defendant was the driver. Wessitsh asked defendant to get out of the Mercedes. When defendant complied, Wessitsh saw he was holding a closed beer and a tube, like a pen or straw, that was melted on one end. Wessitsh recognized it as the kind of device that might be used to ingest illegal narcotics and asked defendant about it. Defendant denied the device had been used to ingest narcotics.

Wessitsh asked defendant for permission to search the car and defendant gave permission to search the glove compartment. The glove compartment was empty. Wessitsh found a plastic bag, which defendant also gave Wessitsh permission to search. That plastic bag contained documentation as to the "previous owner, Mr. Antwon, who [defendant] had purchased the vehicle from" a few weeks earlier. The last registered owner of the car was another individual in Pleasanton, and there was no current registration on file. Wessitsh told defendant he had previously warned Antwon that if he saw him driving the Mercedes again, he would have it towed. Based on the unregistered Mercedes being driven again, Wessitsh decided to have the Mercedes towed. Wessitsh concluded he did not have probable cause to detain defendant further, so he gave defendant a verbal warning for operating a motor vehicle with expired registration and told him he could leave. Wessitsh asked if there was anything he wanted to take with him. Defendant said he did not want anything other than a couple of keys on the key ring. Wessitsh gave defendant the keys and defendant left. Wessitsh did not cite defendant for driving an unregistered vehicle, since defendant said he had recently purchased the Mercedes.

Because of the decision to impound the Mercedes, Wessitsh conducted an inventory search of the Mercedes. Wessitsh testified the purpose of an inventory search

3

is to document valuables, document the condition of the car, and protect the department from liability. Looking at the interior of the car, Wessitsh did not see any valuables inside, or "much of anything else." As a routine practice, Wessitsh commonly conducts a canine sniff and inventory search prior to towing a car. Wessitsh testified the department policy on conducting inventory searches states the officer should go through the vehicle and verify all locations that could have valuable items that should be noted for the owner, which generally includes the trunk. The policy also states the officer should take note of all items of any value and the condition of the vehicle. The policy does not provide for having a canine officer assist in an inventory search. Wessitsh did not believe the policy mentioned containers or what to do with them. The Mercedes had over 200,000 miles on it and the body had multiple "dents, dings, and scratches." Wessitsh described the 1999 Mercedes as being in fair condition and estimated its value as between $0 to $300.

After defendant left the scene, and before beginning the inventory search, Wessitsh used his canine, Ben, to conduct a narcotics sniff of the car. Wessitsh did not recall if Ben alerted anywhere outside the Mercedes. During the "narcotics sniff," Ben went in and out of the car. He was in the car for a "a couple of minutes." At times, he was entirely inside the passenger compartment of the car in both the front and the back seats. When he was fully inside the car, Ben alerted on the center rear armrest. Ben did not alert on anything in the front seat or any other areas of the car. At this point, Wessitsh had still not started the inventory search. After Ben's alert inside the Mercedes, Wessitsh opened the rear armrest and a compartment within the armrest. The only thing he found in the armrest was "an unusable white, powdery kind of coating, so no large quantifiable amount of anything."

Wessitsh then searched the entire interior of the car. In a center console, he found what looked like a standard soda can. He picked it up and noticed it was a "Hide-A-Can." Because Ben had already alerted to "some sort of narcotics" in the car, Wessitsh believed there was narcotics in the car and opened the can. In the can, he found a white

4

crystal substance that appeared to be methamphetamine. Also, in the center console cup holder, he found approximately $700 in cash.

Based on finding cash and apparent narcotics in the center console, Wessitsh believed defendant was involved in the sale of controlled substances. Based on that belief, and the need to do an inventory search, Wessitsh searched the trunk of the car. There was no contraband in plain view in the trunk. There was a black backpack in the trunk, and inside the black backpack was a green bag. Inside the bags, Wessitsh found more crystalline substance consistent with methamphetamine, baggies, and digital scales. He confiscated the suspected methamphetamine and placed the other items back in the Mercedes. The Mercedes was then towed to a lot in West Sacramento.

About an hour later, Wessitsh returned to the car in the tow yard, as he remembered, defendant had cell phones in the car, and he was suspicious that defendant was involved with the sale of controlled substances. He knew that, frequently, people involved in narcotics sales will have records of those transactions on their cell phones and he had forgotten to confiscate them. He remembered there had been two phones in the front driver's compartment and he looked for a third phone in the backpack in the trunk. When he opened the backpack and removed a tin container, he found a handgun. He opened the tin container and found more methamphetamine inside the tin container. Wessitsh also found mail addressed to defendant in the backpack.

On August 23, 2020, Wessitsh saw a Hyundai driving through the Broderick Boat Ramp parking lot which had expired vehicle registration tags. When he stopped the Hyundai, he recognized the driver as defendant. Because defendant previously had a firearm in his car, Wessitsh waited for other officers to arrive, then asked defendant to get out of the car. Wessitsh asked defendant if he had anything illegal and defendant answered he had a usable amount of methamphetamine and a pipe. Wessitsh used his canine to search the Hyundai and the canine alerted at the rear of the vehicle. There was a backpack in the trunk. In the backpack, Wessitsh found methamphetamine and a

5

methamphetamine pipe. He also found scales, baggies, and a Hide-A-Can. There was more methamphetamine in the Hide-A-Can. Wessitsh confiscated the items, advised defendant he was being arrested for both the August 3, 2020, and the current contact, gave defendant his *Miranda* rights, and spoke with defendant. Defendant apologized for not revealing he had the firearm with him on August 3, 2020, but stated it was in the trunk and not accessible that day. Wessitsh searched defendant and found a few hundred dollars in cash and what appeared to be a pay-owe sheet.

Based on evidence obtained in searches of the Mercedes on August 3, 2020, and the Hyundai on August 23, 2020, and defendant's statements made when he was arrested on August 23, 2020, the People filed a complaint charging defendant with being a felon in possession of a firearm (§ 29800, subd. (a)(1)), two counts of transporting methamphetamine (Health & Saf. Code, § 11379, subd. (a)), possession of a controlled substance while armed with a loaded firearm (Health & Saf. Code, § 11370.1, subd. (a)), two counts of possession of methamphetamine for sale (Health & Saf. Code, § 11378), and two counts of misdemeanor possession of controlled substance paraphernalia (Health & Saf. Code, § 11364, subd. (a)).

Defendant moved to suppress the evidence obtained from the searches of both vehicles in the separate stops and any statements made during the August 23, 2020, arrest. The evidence seized included methamphetamine, marijuana, a pipe, cell phones, scales, packaging materials, and a loaded semiautomatic handgun. Defendant argued among other things, the impound of the Mercedes violated his Fourth Amendment rights, as the officer had an investigatory motive; the search exceeded the scope of an inventory search; the canine search violated the Fourth Amendment; the Mercedes was not impounded pursuant to a community caretaking function; and the illegal inventory search and canine search caused subsequent evidence to be tainted. The People opposed the motion and argued, among other points, that defendant did not have a reasonable expectation of privacy in the Mercedes.

6

After a combined hearing on the motion to suppress and preliminary hearing, the magistrate found that after recognizing the Mercedes as a vehicle he had previously seen being driven with expired registration, which still appeared unregistered, Wessitsh detained defendant, conducted an inventory search, and impounded the vehicle. The magistrate concluded Wessitsh had legal authority to impound the Mercedes and conduct an inventory search after impounding the Mercedes. The magistrate further concluded that using the canine during the inventory search did not invalidate the inventory search nor did the fact that Wessitsh also had an investigatory motive for the search. The magistrate also found the subsequent search of the Mercedes at the tow yard was lawful. Accordingly, the magistrate denied the "motion to suppress in full." The magistrate did not make explicit findings regarding defendant's reasonable expectation of privacy in the Mercedes, the validity of the canine search, or the evidence obtained or statements made during the August 23, 2020 arrest. The magistrate held defendant to answer on all counts, except for possession of methamphetamine while armed with a loaded firearm.

After the magistrate held defendant to answer, the People filed an Information. Defendant filed a section 995 motion to set aside the information, based on the alleged violation of defendant's Fourth Amendment rights. Specifically, defendant claimed that the inventory search of the Mercedes was unlawful as it did not support a community caretaking function; the search of the Mercedes exceeded the scope of an inventory search; the search of the Mercedes was not reasonable as a result of using the canine; use of the canine demonstrated the primary motive for the search was investigatory; and the evidence obtained as the result of the unlawful inventory search must be excluded. The People opposed the motion arguing the search was a lawful inventory search that was proper under the community caretaking doctrine, and dual motives including both an investigatory motive and community caretaking were permissible. The People also argued Wessitsh's use of the canine was appropriate in the inventory search as something he always does, and even if the use of the canine also demonstrated an investigatory

7

purpose, a dual purpose was permissible. The People did not renew the argument that defendant did not have a reasonable expectation of privacy in the Mercedes.

The trial court concluded impounding the car was lawful based on the fact it was unregistered and, considering the testimony at the preliminary hearing about prostitution and drug dealing in the area, the car could have been the target of vandalism and theft. The trial court also concluded to the extent the officer had dual motives, given the evidence of a bona fide community caretaking function, the investigatory motive did not invalidate the search. The court also found it was reasonable to use the canine "for the basis of knowing what type of contraband could be in this car."

Following the denial of the section 995 motion, defendant pled no contest to being a felon in possession of a firearm. Pursuant to the plea agreement, the trial court dismissed the remaining counts. The trial court placed defendant on two years' formal probation conditioned on serving 120 days in county jail, stayed pending appeal.

## II. DISCUSSION

*A.     Standard of Review*

To obtain direct appellate review of a magistrate's ruling at the preliminary hearing of a motion to suppress under section 1538.5, the matter must be raised in the trial court to preserve the point. (*People v. Lilienthal* (1978) 22 Cal.3d 891, 896.) On appeal from a section 995 review of the denial of a defendant's motion to suppress, we review the determination of the magistrate at the preliminary hearing. The critical issue is whether the magistrate was correct in denying defendant's motion to suppress. (*People v. Shafrir* (2010) 183 Cal.App.4th 1238, 1245.) As to this issue, we defer to the magistrate's factual findings, express or implied, where supported by substantial evidence, but exercise our independent judgment in determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment. (*People v. Weaver* (2001) 26 Cal.4th 876, 924; *Shafrir, supra*, at p. 1245; *People v. McDonald* (2006) 137 Cal.App.4th 521, 528-529.)

Although we are reviewing the magistrate's decision, the appeal is from the ruling of the trial court. On appeal from the trial court's order, we consider only the arguments raised before the trial court, as we cannot reverse a trial court's decision for an error that it did not commit concerning an issue not raised or argued before it. (*People v. Hawkins* (2012) 211 Cal.App.4th 194, 203 (*Hawkins*); citing *People v. Lilienthal, supra*, 22 Cal.3d at p. 896.) The failure to raise a claim in the trial court forfeits the claim on appeal. (*Hawkins, supra*, at pp. 203-204.)

B.      *Legitimate Expectation of Privacy*

The People's sole response to defendant's appeal of the evidence obtained from the Mercedes is that defendant did not have a reasonable expectation of privacy in the Mercedes as a whole, and in the areas searched, the trunk and the car's interior; thus, he cannot challenge the searches of the Mercedes.[2] The People contend defendant failed to present sufficient proof to corroborate his claim of ownership and therefore failed to meet his burden that he had a reasonable expectation of privacy in the Mercedes.[3]

---

[2] The People also note defendant left the scene immediately upon being told the car would be towed, taking only a keyring, and assert these actions "further demonstrate a lack of interest in the vehicle and its contents." Defendant construes these statements as an argument by the People that defendant "abandoned any interest he had in the Mercedes and its contents." The People, however, made no argument regarding abandonment and cite no legal authority as to such a claim. Without development of the argument or citation to authority, or even a clear indication this is intended to be a discrete contention, the claim is not properly made, and we treat is as waived. (*People v. Stanley* (1995) 10 Cal.4th 764, 793; *People v. Turner* (1994) 8 Cal.4th 137, 214, fn. 19, abrogated on a different ground by *People v. Griffin* (2004) 33 Cal.4th 536, 555, fn. 5.)

[3] We initially note, although the People challenged defendant's "standing" before the magistrate in response to the section 1538.5 motion, they did not raise this claim before the trial court in response to the section 995 motion. Such a failure forfeits the claim on appeal. (See *Steagald v. U.S.* (1981) 451 U.S. 204, 209; *People v. Nottoli* (2011) 199 Cal.App.4th 531, 561; *Hawkins, supra*, 211 Cal.App.4th at pp. 203-204.) Even if this claim were not forfeited by failure to raise it in the trial court, we conclude it lacks merit.

"Defendant bears the burden of showing a legitimate expectation of privacy. [Citation.] Among the factors to be considered are ' " 'whether the defendant has a [property or] possessory interest in the thing seized or the place searched; whether he has the right to exclude others from that place; whether he has exhibited a subjective expectation that it would remain free from governmental invasion, whether he took normal precautions to maintain his privacy and whether he was legitimately on the premises.' " ' " (*People v. Roybal* (1998) 19 Cal.4th 481, 507.) As to this claim, the magistrate did not make any factual findings, resolve any factual disputes, or pass on the credibility of witnesses; because the evidence as to this claim is uncontradicted, we may conduct an independent review as to defendant's reasonable expectation of privacy. (*People v. Slaughter* (1984) 35 Cal.3d 629, 638; *People v. Nottoli, supra*, 199 Cal.App.4th at p. 545.)

It is well-established that, while relevant, legitimate presence in the place searched is not enough on its own to create a reasonable expectation of privacy. (*Rakas v. Illinois* (1978) 439 U.S. 128, 148, 150, fn. 17 [passengers in car had no reasonable expectation of privacy in the glove compartment and under car seat, where they claimed only that they were in car with owner's permission and did not assert they had a legitimate expectation of privacy in areas searched].) It is also well-established that a person need not have legal ownership or a legal property interest in the place searched to establish a reasonable expectation of privacy in the place searched. (*Byrd v. U.S.* (2018) ___U.S.___ [138 S.Ct. 1518, 1527, 200 L.Ed.2d 805, 814].) A person who lawfully possesses a vehicle and exercises control over it, including the right to exclude others, has a legitimate expectation of privacy in the vehicle. (*Byrd, supra,* 138 S.Ct. at pp. 1522, 1527-1528, 200 L.Ed.2d at p. 809 [driver of rental car who was not listed as an authorized driver on rental agreement, but was in lawful possession of the car, had an expectation of privacy, as one who lawfully possesses or controls property, and has the attendant right to exclude others, generally has a legitimate expectation of privacy in it.]; *People v. Leonard* (1987)

10

197 Cal.App.3d 235, 239 [driver using car with owner's permission and exercising control over it, has reasonable expectation of privacy in car]; *U.S. v. Portillo* (9th Cir. 1980) 633 F.2d 1313, 1317 [defendant had legitimate expectation of privacy in car entrusted to him where he had both permission to use his friend's car and the keys to the ignition and the trunk, with which he could exclude all others, except the owner].)

On August 3, 2020, defendant was the driver and sole occupant of the Mercedes. He had the keys to the car and stored his personal belongings in it. He told Wessitsh he had recently purchased the car from Antwon. Although Antwon was not the last registered owner of the Mercedes, the Mercedes had not been registered since March 2019. Wessitsh saw Antwon driving the Mercedes approximately two months earlier and although the registration was "quite expired," Antwon was able to provide some documentation to Wessitsh. Wessitsh also knew Antwon had previously sold another person an unregistered vehicle. In the search of the glove compartment, Wessitsh found documentation in the Mercedes as to "the previous owner, Mr. Antwon." Wessitsh also apparently credited defendant's claim of having recently purchased the Mercedes from Antwon, as he did not cite defendant for driving an unregistered vehicle based on that claim.

The evidence was uncontradicted. There was no evidence, or any assertion, that the Mercedes was stolen. The People did not, and do not now, argue defendant was not in lawful possession of the Mercedes. The only fact potentially in dispute was whether defendant owned the Mercedes; but it was not necessary that defendant be the owner to establish a reasonable expectation of privacy. Defendant was in lawful possession of the Mercedes, had keys to the car, with which he could exclude others, and stored his belongings in the car. This was sufficient evidence to show defendant had a legitimate expectation of privacy in the Mercedes. (*People v. Leonard, supra*, 197 Cal.App.3d at p. 239; *U.S. v. Portillo, supra*, 633 F.2d at p. 1317.)

11

*C.     Search of Mercedes*

Defendant contends the trial court erred in denying his motions to suppress and set aside the information because:  (1) the canine search before the inventory search was not supported by probable cause; (2) the canine sniff was not part of the inventory search and was not authorized by standard inventory search procedures; (3) opening closed containers was not authorized by the department's standard inventory search procedures; (4) the Mercedes was not seized pursuant to a community caretaking function; (5) all the evidence found after the canine search of the Mercedes, including the statements made by defendant during the August 23, 2020 search and arrest, was tainted by the illegality of the first search of the Mercedes.  As to the search of the Mercedes, the People make no argument that the search of the Mercedes was supported by probable cause, or any argument supporting the validity of the impound of the Mercedes, the inventory search, or the canine search.

*1.     Impound*

When conducted according to standard criteria, and on the basis of something other than suspicion of evidence of criminal activity, impounding vehicles is condoned as part of a " 'community caretaking' function." (*Colorado v. Bertine* (1987) 479 U.S. 367, 381; see *id.* at p. 375; *South Dakota v. Opperman* (1976) 428 U.S. 364, 368.)  "Statutes authorizing impounding under various circumstances 'may constitute a standardized policy guiding officers' discretion' ([*People v.*] *Williams* [(2006)] 145 Cal.App.4th [756,] 763, though 'statutory authorization does not, in and of itself, determine the constitutional reasonableness of the seizure' (*id.* at p. 762)." (*People v. Torres* (2010) 188 Cal.App.4th 775, 787; see *People v. Lee* (2019) 40 Cal.App.5th 853, 867-868.)  To satisfy constitutional reasonableness, the impound must be justified by the community caretaking function. (*Lee, supra*, at p. 867.)  Impounding a vehicle serves that community caretaking function "when a vehicle is parked illegally, blocks traffic or passage, or stands at risk of theft or vandalism."  (*Ibid.*)

The magistrate found Wessitsh had legal authority to impound the Mercedes. Implicit in this finding is a determination that the impound served the community caretaking function.

Wessitsh was statutorily authorized to impound the car based on its expired registration (Veh. Code, § 22651, subd. (o)(1)(A)).  Though there was no evidence the car was parked illegally or blocking traffic, and no evidence as to vehicle thefts or vandalism in the area, preventing the immediate and continued unlawful operation of a car also serves a community caretaking function.  (See *People v. Redd* (2010) 48 Cal.4th 691, 721; *People v. Suff* (2014) 58 Cal.4th 1013, 1056.)  The Mercedes had not been properly registered for well over a year and, two months earlier, Wessitsh had seen the same unregistered vehicle being driven in the area.  The prolonged period of the lack of vehicle registration and continued unlawful driving of the Mercedes was substantial evidence supporting the conclusion that the impound served a community caretaking function.

### 2. *Inventory Search*

Resolving the reasonableness of the inventory search requires us to consider two distinct kinds of searches–an inventory search and a canine search.

The use of a well-trained narcotics detection dog to sniff the *exterior* of a vehicle during a lawful traffic stop, is generally not a search and does not implicate legitimate privacy interests.  (*Illinois v. Caballes* (2005) 543 U.S. 405, 409.)  But, the exterior of a vehicle is different than the interior of a vehicle, a search of a car's interior is much more intrusive.  (*U.S. v. Joshua* (D. Alaska 2021) 564 F.Supp.3d 860, 877.)  "People have a reasonable expectation of privacy in the interiors of their automobiles; police may not search an automobile unless they have probable cause to believe it contains contraband." (*U.S. v. Stone* (10th Cir. 1989) 866 F.2d 359, 363; see *Almeida-Sanchez v. United States* (1973) 413 U.S. 266, 269-270.)

13

Where law enforcement "physically occupie[s]" a vehicle "for the purpose of obtaining information" the Fourth Amendment applies. (*U.S. v. Jones* (2012) 565 U.S. 400, 404; see *id.* at pp. 405, 407-408 [physically mounting a GPS device on vehicle to monitor vehicle's movement constituted a search].) And introducing a trained police dog to a constitutionally protected area to investigate is a search under the Fourth Amendment. (*Florida v. Jardines* (2013) 569 U.S. 1, 10-12 [canine sniff on front porch of home was a search].) Although the Supreme Court has not directly addressed the question, under *Jones* and *Jardines*, a canine's trespass into a car during an exterior sniff converts what would be a non-search under *Illinois v. Caballes, supra*, into a search which must be supported by probable cause. (*State v. Randall* (2021) 169 Idaho 358, 367 (*Randall*).)

In contrast to canine searches, inventory searches of police-impounded cars are "a well-defined exception to the warrant requirement of the Fourth Amendment." (*Colorado v. Bertine, supra*, 479 U.S. at p. 371.) Neither the policies behind the warrant requirement or the concept of probable cause are implicated in an inventory search made as part of routine administrative caretaking functions. (*Ibid.*)

The need to impound vehicles as part of community caretaking, led to the development of caretaking procedures to secure and inventory the vehicle's contents. (*South Dakota v. Opperman, supra*, 428 U.S. at p. 369.) These procedures responded to three distinct needs to protect: (1) the owner's property from theft or vandalism; (2) the police against claims or disputes over the property; and (3) the police from potential danger. (*Ibid.*; *Colorado v. Bertine, supra*, 479 U.S. at p. 372.)

A valid inventory search must be carried out pursuant to preexisting standardized procedures, to ensure the search is "limited in scope to the extent necessary to carry out the caretaking function." (*South Dakota v. Opperman, supra*, 428 U.S. at p. 375; see *People v. Williams* (1999) 20 Cal.4th 119, 138.) "The policy or practice governing inventory searches should be designed to produce an inventory. The individual police

14

officer must not be allowed so much latitude that inventory searches are turned into 'a purposeful and general means of discovering evidence of crime.' " (*Florida v. Wells* (1990) 495 U.S. 1, 4.)

The prosecution bears the burden of establishing a warrantless search was conducted in accordance with the law enforcement agency's preexisting protocol governing inventory searches. (*Florida v. Wells, supra*, 495 U.S. at p. 4; see also *People v. Williams, supra*, 20 Cal.4th at p. 138 ["the prosecution must always prove the existence of a policy supporting an inventory search"]; *People v. Smith* (2002) 95 Cal.App.4th 283, 300 ["Once the justification of an inventory search [is] raised by the prosecution, the burden of establishing a standardized police policy remained with the prosecution"].) "This rule may require the prosecution to prove more than the existence of some general policy authorizing inventory searches; when relevant, the prosecution must also prove a policy or practice governing the opening of closed containers encountered during an inventory search. ([*Florida v. Wells, supra*,] at pp. 4-5.)" (*Williams, supra*, at p. 138.) Absent such a policy, the search is not sufficiently regulated to satisfy the Fourth Amendment. (*Florida v. Wells, supra*, at pp. 4-5; *People v. Benites* (1992) 9 Cal.App.4th 309, 326.)

Wessitsh acknowledged he did not have probable cause to detain defendant and did not claim he had probable cause to search the car prior to Ben's alert inside the Mercedes. The People do not claim otherwise on appeal. Before starting the inventory search, and separate from the inventory search, Wessitsh had Ben perform a "sniff." In the course of that "sniff," Ben went fully inside the Mercedes, in the front and back seats. There was no evidence Ben alerted outside the vehicle or that he was following the scent of narcotics into the car. (*Randall, supra*, 169 Idaho at p. 368; cf. *U.S. v. Neatherlin* (D. Mont. 1999) 66 F.Supp.2d 1157, 1160-1161 [uncontroverted testimony dog entered vehicle after detecting drugs from exterior sniff].) To the contrary, Ben went in and out of the car for a few minutes before he alerted on anything inside the car. Ben entering the

car, a constitutionally protected area, transformed the "sniff" to a search, which required probable cause to support it.

In addition to the lack of probable cause supporting the canine search, there was no evidence of a standardized policy regarding either the use of a canine or opening containers in the course of an inventory search. The only evidence of the standardized procedures governing inventory searches, opening containers, and using canines was Wessitsh's testimony. Wessitsh testified that the department policy indicated the officer should "go through" the vehicle and "verify" all locations that could contain valuable items, including the trunk. Wessitsh testified the policy did not provide for having a canine assist in the inventory search. Wessitsh also testified that he did not believe the policy mentioned containers or what to do with them.

Despite the lack of any policy permitting use of a canine to assist in an inventory search, Wessitsh allowed Ben to go fully inside of the Mercedes, in both the front and back seats, as a *precursor* to the inventory search. Based on the fact that Ben alerted *inside* the car, Wessitsh concluded there was "some sort of narcotics" in the car and opened the "Hide-A-Can" in the center console and found cash and methamphetamine. After finding cash and drugs in the interior of the car, Wessitsh concluded defendant was involved in sales of controlled substances, and based on that conclusion, *not* the procedures for conducting an inventory search, Wessitsh opened the bags in the trunk, where he ultimately found more methamphetamine and a firearm.

Wessitsh's testimony indicates he did not open the Hide-A-Can or the bags in the trunk pursuant to any standardized department policy; but, rather based on Ben's alert in the car and Wessitsh's conclusion that there were narcotics in the car and defendant was involved in narcotics sales. That is, after Ben alerted inside the car, Wessitsh's search "turned into 'a purposeful and general means of discovering evidence of crime.' " (*Florida v. Wells, supra,* 495 U.S. at p. 4.) Moreover, in the absence of a standardized policy regarding opening closed containers and using canines in inventory searches,

opening the Hide-A-Can and the bags in the trunk was not sufficiently regulated to satisfy the Fourth Amendment. (*Id.* at pp. at pp. 4-5.) With no probable cause to support the canine search of the Mercedes, and no standardized policy regarding opening containers or using canines in an inventory search, the trial court improperly denied the motion to suppress the evidence found in opening the Hide-A-Can (methamphetamine) and the bags in the trunk of the Mercedes (methamphetamine and handgun) both from the initial search and the search at the tow yard.

"Because it is impossible to assess the impact of an erroneous denial of a motion to suppress evidence on a defendant's decision to plead guilty, the harmless error rule is inapplicable in appeals taken pursuant to [] section 1538.5, subdivision (m). (*People v. Miller* (1983) 33 Cal.3d 545, 556; *People v. Hill* (1974) 12 Cal.3d 731, 767-769, overruled on other grounds in *People v. DeVaughn* (1977) 18 Cal.3d 889, 896, fn. 5.) Therefore, defendant must be afforded the opportunity to withdraw his plea, in which case the People are free to reinstate the original charges." (*People v. Ruggles* (1985) 39 Cal.3d 1, 13.)

D.      *Search of Hyundai*

Defendant claims the evidence obtained in the August 23, 2020, search of the Hyundai must also be suppressed as it was tainted by the illegality of the search of the Mercedes. The People contend there was independent probable cause to search the Hyundai based on defendant's admission during a lawful stop that he had methamphetamine and a pipe in the car. Defendant claims this admission was in response to a question designed to uncover additional drug related evidence against defendant as a result of the prior unlawful search.

Defendant did not renew his challenge to the search of the Hyundai, or statements made by defendant during that stop, in his section 995 motion.[4] The only challenges made in the section 995 motion in the trial court were to the propriety of the impound and inventory searches of the Mercedes. Specifically, defendant argued the impound of the Mercedes did not serve a community caretaking function, the search of the Mercedes exceeded the scope of an inventory search, and the inventory search was not reasonably executed by virtue of the use of the canine. The failure to raise a claim in the trial court forfeits the claim on appeal. (*Hawkins, supra*, 211 Cal.App.4th at pp. 203-204; see *People v. Du Bose* (1970) 10 Cal.App.3d 544, 550-551 [although defendant moved to set aside the information under section 995 on one ground, he forfeited any contention that the information should be set aside based on a contention not raised before the trial court].)

---

[4] Defendant challenged the search of the Hyundai in his motion to suppress before the magistrate.

## III.  DISPOSITION

The judgment is reversed and remanded to the trial court.  If defendant makes a motion to withdraw his no contest plea within 30 days of the finality of this opinion, the trial court is directed to grant that motion and vacate the guilty plea.  If the plea is vacated, on the People's motion, the original charges shall be reinstated, and trial or other disposition will proceed in accordance with the views expressed in this opinion.  If defendant does not elect to withdraw his plea of guilty, the trial court shall reinstate the judgment.  (*People v. Ruggles, supra*, 39 Cal.3d at p. 13.)

/S/

RENNER, Acting P. J.

We concur:

/S/

EARL, J.

/S/

BOULWARE EURIE, J.

19